983 A.2d 477

ATTORNEY GRIEVANCE COMMISSION OF MARYLAND

v.

George S. JAROSINSKI.

Misc. Docket AG No. 32, Sept. Term, 2008.

Court of Appeals of Maryland.

Nov. 16, 2009.

**434**

Dolores O. Ridgell, Asst. Bar Counsel (Melvin Hirshman, Bar Counsel, Atty. Grievance Com'n of Maryland), for Petitioner.

George Simon Jarosinski, Pikesville, for Respondent.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, ADKINS and BARBERA, JJ.

**BARBERA, J.**

The Attorney Grievance Commission of Maryland ("Petitioner"), acting through Bar Counsel and pursuant to Maryland Rule 16–751(a),[1] filed a Petition for Disciplinary or Remedial Action ("Petition") against George S. Jarosinski, Respondent. Bar Counsel charged Respondent with violating the following Maryland Lawyers' Rules of Professional Conduct ("MRPC"), Maryland Rules, and Maryland Statute: MRPC 1.15 (Safekeeping Property),[2] MRPC 8.1 (Bar Admission and Disciplinary Matters),[3] MRPC 8.4 (Miscon-

---

1. Maryland Rule 16–751(a) provides:

>(a) **Commencement of disciplinary or remedial action.** (1) Upon approval of Commission. Upon approval or direction of the Commission, Bar Counsel shall file a Petition for Disciplinary or Remedial Action in the Court of Appeals.

2. At the time of Respondent's relevant conduct, the applicable version of MRPC 1.15(a) provided:

>(a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained pursuant to Title 16, Chapter 600 of the Maryland Rules. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and of other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation.

>MRPC 1.15(a) was amended March 12, 2007, effective January 1, 2008. The current version of the Rule has the same purpose and effect as the earlier version and provides:

>(a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained pursuant to Title 16, Chapter 600 of the Maryland Rules, and records shall be created and maintained in accordance with the Rules in that Chapter. Other property shall be identified specifically as such and appropriately safeguarded, and records of its receipt and distribution shall be created and maintained. Complete records of the account funds and of other property shall be kept by the lawyer and shall be preserved for a period of at least five years after the date the record was created.

3. MRPC 8.1, in relevant part, provides:

duct),[4] Maryland Rule 16–606 (Name and Designation of Account),[5] Maryland Rule 16–609 (Prohibited Transactions),[6] and Maryland Code (2006 Repl.Vol.), § 10–306 of the Business Occupations and Professions Article ("B.O.P.") (Misuse

---

An applicant for admission or reinstatement to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not:

\* \* \*

(b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this Rule does not require disclosure of information otherwise protected by Rule 1.6.

4. MRPC 8.4, in relevant part, provides:
 It is professional misconduct for a lawyer to:

 \* \* \*

 (b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;
 (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;
 (d) engage in conduct that is prejudicial to the administration of justice;

5. Maryland Rule 16–606 provides:
 An attorney or law firm shall maintain each attorney trust account with a title that includes the name of the attorney or law firm and that clearly designates the account as "Attorney Trust Account", "Attorney Escrow Account", or "Clients' Funds Account" on all checks and deposit slips. The title shall distinguish the account from any other fiduciary account that the attorney or law firm may maintain and from any personal or business account of the attorney or law firm.

6. Maryland Rule 16–609 provides:
 a. **Generally.** An attorney or law firm may not borrow or pledge any funds required by the Rules in this Chapter to be deposited in an attorney trust account, obtain any remuneration from the financial institution for depositing any funds in the account, or use any funds for any unauthorized purpose.
 b. **No cash disbursements.** An instrument drawn on an attorney trust account may not be drawn payable to cash or to bearer, and no cash withdrawal may be made from an automated teller machine or by any other method. All disbursements from an attorney trust account shall be made by check or electronic transfer.
 c. **Negative balance prohibited.** No funds from an attorney trust account shall be disbursed if the disbursement would create a negative balance with regard to an individual client matter or all client matters in the aggregate.

of trust money).[7]

Pursuant to Maryland Rule 16–752(a),[8] we referred the Petition to the Honorable Susan Souder of the Circuit Court for Baltimore County, to conduct an evidentiary hearing and make findings of fact and conclusions of law. Judge Souder held an evidentiary hearing on April 28, 2009, and on May 19, 2009, issued her findings of fact and recommended conclusions of law, pursuant to Maryland Rule 16–757(c).[9] Judge Souder found by clear and convincing evidence that Respondent had violated MRPC Rules 1.15(a), 8.1(b), 8.4(b), (c), and (d); Maryland Rules 16–606 and 16–609; and B.O.P. § 10–306.

## I.

Respondent was admitted as a member of the Bar of this Court on June 1, 1983. The conduct at issue in this Petition occurred incident to Respondent's representation of several clients in personal injury actions in connection with his practice of law as the Law Office of George S. Jarosinski and/or the Law Office of George S. Jarosinski, P.A.

---

**7.** B.O.P. § 10–306 provides:

A lawyer may not use trust money for any purpose other than the purpose for which the trust money is entrusted to the lawyer.

**8.** Maryland Rule 16–752(a) provides:

(a) **Order.** Upon the filing of a Petition for Disciplinary or Remedial Action, the Court of Appeals may enter an order designating a judge of any circuit court to hear the action and the clerk responsible for maintaining the record. The order of designation shall require the judge, after consultation with Bar Counsel and the attorney, to enter a scheduling order defining the extent of discovery and setting dates for the completion of discovery, filing of motions, and hearing.

**9.** Maryland Rule 16–757(c) provides:

(c) **Findings and conclusions.** The judge shall prepare and file or dictate into the record a statement of the judge's findings of fact, including findings as to any evidence regarding remedial action, and conclusions of law. If dictated into the record, the statement shall be promptly transcribed. Unless the time is extended by the Court of Appeals, the written or transcribed statement shall be filed with the clerk responsible for the record no later than 45 days after the conclusion of the hearing. The clerk shall mail a copy of the statement to each party.

Despite the grave allegations in the Petition, Respondent did not participate in the proceedings against him until he appeared before us at oral argument on October 5, 2009. Respondent's lack of participation and the corresponding default judgment against him was summarized in Judge Souder's Findings of Fact and Conclusions of Law: [10]

On October, 14, 2008, this matter was transmitted to this Court for Baltimore County to be heard and determined in accordance with Maryland Rule 16–757. An Affidavit of Service was filed which reflected that, on January 30, 2009, Respondent was personally served with the Petition for Disciplinary or Remedial Action, the summons of the Circuit Court for Baltimore County issued January 15, 2009 and the Order of the Court of Appeals dated October 14, 2008. At the same time, Respondent was also served with Petitioner's First Set of Interrogatories and a Request for Production of Documents. Respondent has not filed an Answer to the Petition.

After the time for filing the Answer to the Petition passed, on or about March 5, 2009, Petitioner filed a Motion for Order of Default which was granted on March 6, 2009 and an Order of Default was issued. The Order set the date for the evidentiary hearing for April 28, 2009. On March 11, 2009, a copy of the Order of Default was sent to Respondent. Respondent did not respond to the Order of Default or appear at the hearing on April 28, 2009.

In accordance with Maryland Rule 2–323(e),[11] the averments in the Petition are deemed admitted for purposes of the proceedings.

---

**10.** We have excluded any references to Exhibits contained in the original.

**11.** Rule 2–323 (Answer) provides in relevant part:

(e) **Effect of failure to deny.** Averments in a pleading to which a responsive pleading is required, other than those as to the amount of damages, are admitted unless denied in the responsive pleading or covered by a general denial. Averments in a pleading to which no responsive pleading is required or permitted shall be taken as denied or avoided. When appropriate, a party may claim the inability to

In addition to the above, Judge Souder made the following findings of fact.

4. During the period May 22, 2007 through October 31, 2007, Respondent maintained two checking accounts at Provident Bank. Both accounts were intended by Respondent to be used as Attorney Trust Accounts.

5. The checks and deposit tickets for these accounts did not include the designation: "Attorney Trust," "Attorney Escrow" or "Client Funds Account."

6. Respondent opened the first account, account number 7814, on or about May 22, 2007. Respondent was the sole authorized signer on the account.

7. Respondent opened the second account, account number (ending with) 8012, on or about July 9, 2007. Account 8012 contained the phrase "Escrow Account." Respondent was the sole authorized signer on this account.

8. During times relevant to this matter, Respondent received funds intended to be held in trust by him on behalf of clients and/or third persons in connection with Respondent's law practice.

9. These funds were deposited to one or the other of the trust accounts maintained by Respondent.

10. On August 23, 2007, check number 114 in the amount of $1,833.33 made payable to Respondent, cleared the trust account number 8012. The check had the following hand-written notation: "Tanya Hairston–Fee D/A 5–26–07." On September 19, 2007, a check from Nationwide Insurance payable to "Tanya Hairson and Jarosinski, George Her Attorney" in the amount of $5,500 was deposited to the same trust account.[12] The date of the check was Septem-

admit, deny, or explain an averment on the ground that to do so would tend to incriminate the party, and such statement shall not amount to an admission of the averment.

12. This client is identified in the trust account ledger as "Tanya Hairson," but her name appears as "Tanya Hairston" on the check Respondent drafted to himself as payment for her legal fees. For the purposes of this opinion, we assume that "Hairson" is correct.

ber 5, 2007. The evidence established that Respondent disbursed funds representing his fee for the Tanya Hairson settlement 27 days prior to the deposit of the settlement funds and 13 days before the check was even written by the insurer.

11. On August 23, 2007, check number 112 in the amount of $1,833.33 payable to Respondent cleared trust account number 8012. This check was dated August 22, 2007 and bears the notation "Fee Dana Ferguson." On October 1, 2007, a check from Nationwide Insurance in the amount of $5,500 made payable to "Dana D. Ferguson and Jarosinski, George Her Attorney" was deposited to the same trust account. The date the check was issued/written was September 25, 2007. The evidence established that Respondent disbursed his fee for the Dana Ferguson representation 38 days before depositing the settlement funds and 33 days before the insurer issued the check.

12. The funds disbursed to Respondent on August 23, 2007 were in trust account 8012 as a result of prior deposits of trust funds for the following clients: W. McManus; K. Cornish; J. Chase; D. Neal; and L. Lewis. At a time that Respondent owed a trust obligation in excess of $8,000.00 for these clients, the balance in his attorney trust account was approximately $1,600.

13. On October 15, 2007, two checks payable to Respondent issued from trust account 8012. One of the checks was in the amount of $35.17 and had a notation of "Expenses Tameka Smith 6–16–07." The check in the amount of $2,233.33 has a notation of "Tameka Smith 6–16–07." The settlement funds for Tameka Smith were not deposited until October 19, 2007, four days after the corresponding fees and costs were disbursed.

14. Respondent repeated this conduct with regard to a client name[d] Katrina Jones–Coleman. On October 1, 2007, check number 174 in the amount of $13.00 was disbursed to Respondent from trust account number 8012. This check's notation indicated it was for "Expenses Katrina Jones–Coleman 5–17–07." Check number 176 dated 9–15–

07 in the amount of $1,650 was on account 8012 payable to Respondent [and] was posted on Oct. 15, 2007. The settlement funds for Katrina Jones–Coleman were not deposited to the account until October 19, 2007. Respondent received reimbursement for expenses 18 days and his fee 4 days before the settlement proceeds were deposited.

15. On or about June 18, 19, and 21, 2007, Petitioner received notices of overdrafts on Respondent's attorney trust account number 7814 at Provident Bank.

16. On June 29, 2007, Respondent was sent a letter by Deputy Bar Counsel requesting a written explanation for the overdrafts and the production of financial records covering the period March through June 2007. The Respondent was asked to respond to this letter within ten (10) days. Respondent failed to respond to the letter of June 29, 2007 in a timely manner.

17. On or about July 20, 2007, Petitioner received a notice of overdraft on Respondent's attorney trust account number 8012 at Provident Bank.

18. On or about August 1, 2007, Assistant Bar Counsel sent Respondent a letter informing him that a case had been docketed against him and requesting that a written response and financial records be provided within fifteen (15) days. Respondent failed to respond in a timely manner to Assistant Bar Counsel's letter of August 1, 2007.

19. On or about August 22, 2007, a letter dated August 17, 2007, was received from Respondent. This letter was addressed to Deputy Bar Counsel and responded to the letter of June 29, 2007. In this letter, Respondent did not fully and accurately represent the transactions in the account in question.

20. On or about August 23, 2007, the Attorney Grievance Commission received another overdraft notice in Respondent's attorney trust account number 7814 at Provident Bank.

21. On or about September 12, 2007, Assistant Bar Counsel sent Respondent another letter requesting a writ-

ten response within fifteen (15) days. Respondent failed to respond to Assistant Bar Counsel's letter of September 12, 2007.

22. On or about September 20, 2007, the Attorney Grievance Commission received two overdraft notices for account 8012.

23. On or about October 8, 2007, Petitioner issued a subpoena to Provident Bank for the records for both trust accounts for the period May through October 2007.

24. On or about November 21, 2007, Commission Investigator, Marc Fiedler, began efforts to arrange an interview of the Respondent. Mr. Fiedler was not able to arrange for this interview until on or about December 27, 2007. On that date, Respondent and Mr. Fiedler met at Respondent's office. During the interview, Respondent failed to address all of Mr. Fiedler's questions. Respondent terminated the interview to seek advice of counsel. Thereafter, neither Respondent nor his attorney contacted Mr. Fiedler to reschedule the interview.

From these facts, Judge Souder drew the following conclusions of law.[13]

### Rule 1.15. Safekeeping Property.

Respondent violated Rule 1.15(a) when he failed to hold the funds entrusted to him by numerous clients in the attorney trust account until properly disbursed. On July 18, 2007, account number 8012 had a negative balance because Respondent did not deposit enough into the account to pay the charge for the purchase of checks for this account. The shortfall was corrected when Respondent deposited the settlement check for the clients named Mc-Manus and Cornish on August 7, 2007. Thus, the Mc-Manus/Cornish trust funds were invaded to cover the shortfall.

---

**13.** We have omitted from our recitation of Judge Souder's conclusions of law the text of the various rule violations.

Rule 1.15(a) was also violated when Respondent paid himself fees and costs for settlements prior to the deposit of the funds for those settlements. By doing so, Respondent misappropriated funds being held for other clients as a result of earlier deposits.

On August 24, 2007, Respondent's attorney trust account had a balance of $1,586.97. As of that date he should have been holding at least $8,365.04. This shortfall provides clear and convincing evidence that, Respondent misappropriated trust funds in violation of Rule 1.15(a). See, *Attorney Grievance Commission v. Glenn*, 341 Md. 448, 460, 671 A.2d 463, 469 (1996) (The fact that the balance in the attorney trust account fell below the amount necessary to fulfill client obligations indicates a misappropriation or unauthorized use of trust funds.).

### *Maryland Rule 16–609—Prohibited Transactions.*

As indicated above, Respondent used trust funds for unauthorized purposes when he used funds held in his trust account for other clients to pay himself fees and costs relating to settlements prior to the deposit of those settlement funds. The same conduct which violated Rule 1.15(a) provides clear and convincing evidence that Maryland Rule 16–609 was violated.

### *Md.Code Ann. Business Occupations and Professions Art. § 10–306. Misuse of trust money.*

Although not required for a violation of Rule 1.15 or Maryland Rule 16–609, in order to find that Respondent violated § 10–306 of the Business Occupations and Professions Article, the Court must find that the misappropriation or unauthorized use of the trust funds was knowing and/or intentional. See, e.g., *Attorney Grievance Commission v. Awuah*, 346 Md. 420, 435, 697 A.2d 446, 454 (1997)(Members of the Bar are charged with knowledge of the ethical rules governing the operation of an attorney trust account.); *Attorney Grievance Commission v. Adams*, 349 Md. 86, 97–98, 706 A.2d 1080, 1085 (1998)(In order to invoke disciplinary proceedings for a violation of this statute the violation must be willful.).

Respondent knew that he was not using trust funds deposited for Tanya [Hairson] and Dana Ferguson when he made disbursements relating to those settlements on August 23, 2007, because he had neither received or deposited the settlement checks from the insurers as of that date. Respondent knew, therefore, that the only funds available to make the disbursements related to deposits made for other clients. There is clear and convincing evidence that Respondent knew he was using trust funds for unauthorized purposes. See, *Attorney Grievance Commission v. Zuckerman,* 386 Md. 341, 372–73, 872 A.2d 693, 712 (2005) (An attorney violated § 10–306 when he disbursed funds to his clients from his trust account before their settlement checks had been deposited into the trust account, thereby providing funds belonging to one client to another.).

### *Rule 8.1 Bar Admission and Disciplinary Matters.*

Respondent violated Rule 8.1(b) when he failed to respond in a timely manner to Deputy Bar Counsel's letter of June 29, 2007. Although he was asked to respond within 10 days of his receipt of the letter, he did not request an extension and did not provide a response to this letter until August 17, 2007. By that time he had received the letter of August 1, 2007 to which he did not respond. Respondent also failed to respond to Assistant Bar Counsel's letter of September 12, 2007. See, *Attorney Grievance Commission v. Fezell,* 361 Md. 234, 249–50, 760 A.2d 1108, 1116 (2000), *Attorney Grievance Commission v. Queen,* [407 Md. 556, 565, 967 A.2d 198, 203 (2009) ] (Although a lawyer need not drop everything until he or she has completed a response, the lawyer who receives a request for information from Bar Counsel can comply with the requirements of Rule 8.1(b) by (1) acknowledging receipt of Bar Counsel's request, (2) explaining why he or she needs an extension of time to file a response, and (3) requesting that Bar Counsel consent to an extension for a reasonable period of time.).

### *Maryland Rule 16–606—Name and Designation of Account.*

There is clear and convincing evidence that the checks and deposit tickets for both of the attorney trust accounts maintained by Respondent from May through October 2007 did not bear one of the necessary designations: Attorney Trust Account; Attorney Escrow Account or Clients' Fund Account. The title on the checks for account number 7814 stated: "Law Office of George S. Jarosinski." The checks and deposit tickets for account number 8012 are titled: "George S. Jarosinski, P.A. Escrow Account." While the title for this account added the words "Escrow Account," it did not indicate that this is an attorney escrow account or even that it was a law firm's escrow account. There is clear and convincing evidence that Respondent violated Maryland Rule 16–606.

### *Rule 8.4 Misconduct.*

Respondent engaged in criminal acts that reflected adversely on his honesty, trustworthiness or fitness as a lawyer in other respects when he knowingly used trust funds for unauthorized purposes. The willful use of trust funds for unauthorized purposes violates § 10–606(b) of the Business Occupations and Professions Article. This section provides that: A person who willfully violates any provision of Subtitle 3, [P]art I of this title, except for the requirement that a lawyer deposit trust moneys in an attorney trust account for a charitable purpose under § 10–303 of this title, is guilty of a misdemeanor and on conviction is subject to a fine not exceeding $5,000 or imprisonment not exceeding 5 years or both.

A criminal conviction is not required for a finding that Rule 8.4(b) was violated. The Court need only find that there is clear and convincing evidence of acts constituting a criminal offense. See, *Attorney Grievance Commission v. Garland,* 345 Md. 383, 394–95, 692 A.2d 465, 471 (1997). The unauthorized use of trust funds adversely reflects on Respondent's honesty and trustworthiness to practice law.

There is clear and convincing evidence that Respondent engaged in conduct involving dishonesty, fraud, deceit or

misrepresentation, in violation of Rule 8.4(c), when he knowingly misappropriated client trust funds.

An attorney engages in conduct prejudicial to the administration of justice when he or she engages in conduct which is likely to seriously impair the public's perception of the legal profession. *Attorney Grievance Commission v. Clark,* 363 Md. 169, 183, 767 A.2d 865, 873 (2001). Respondent engaged in conduct prejudicial to the administration of justice, in violation of Rule 8.4(d), when he misappropriated funds[.] See, e.g., *Attorney Grievance Commission v. Zuckerman,* 386 Md. 341, 374–75, 872 A.2d 693, 713 (2005) (Misappropriation of client funds and misuse of an attorney trust account violates Rule 8.4(d)).

Judge Souder found no facts in mitigation of the violations.

## II.

 "This Court has original and complete jurisdiction over attorney discipline proceedings[ ] in Maryland." *Attorney Grievance Comm'n v. Thomas,* 409 Md. 121, 147, 973 A.2d 185, 200 (2009) (internal quotations and citations omitted). Although we conduct an independent review of the record, the hearing judge's findings of fact will not be disturbed unless clearly erroneous. *Id.* (citing *Attorney Grievance Comm'n v. Ugwuonye,* 405 Md. 351, 368, 952 A.2d 226, 235–36 (2008)). Moreover, this Court defers to the hearing judge's opportunity to assess the witnesses' credibility, and we will not interfere with the hearing judge's factual findings as long as they are founded on clear and convincing evidence.[14] *Attorney Grievance Comm'n v. Zdravkovich,* 375 Md. 110, 126, 825 A.2d 418, 427 (2003); *see also* Md. Rule 16–757(b).[15] The hearing

---

**14.** " 'The clear and convincing standard of proof lies somewhere between a preponderance of evidence standard, which is generally applied to civil cases, and beyond a reasonable doubt standard, which is applied to most crimes.' " *Attorney Grievance Comm'n v. Siskind,* 401 Md. 41, 54, 930 A.2d 328, 335 (2007) (quoting *Attorney Grievance Comm'n v. Ward,* 394 Md. 1, 16, 904 A.2d 477, 486 (2006)).

**15.** Md. Rule 16–757(b) provides:

judge's proposed conclusions of law, however, we review *de novo.* *Ugwuonye,* 405 Md. at 368, 952 A.2d at 236. This standard of review applies even when the hearing judge has entered a default order and judgment. *Zdravkovich,* 375 Md. at 126, 825 A.2d at 427. Simply stated, this Court determines ultimately whether an attorney has engaged in professional misconduct. *Attorney Grievance Comm'n v. Briscoe,* 357 Md. 554, 562, 745 A.2d 1037, 1041 (2000).

■ Neither Petitioner nor Respondent filed exceptions to Judge Souder's findings of fact and conclusions of law. Pursuant to Maryland Rule 16–759(b)(2)(A),[16] we treat the hearing judge's findings of fact "as established for the purpose of determining appropriate sanctions, if any." Rule 16–759(b)(2)(A); *Attorney Grievance Comm'n v. Snyder,* 406 Md. 21, 27–28, 956 A.2d 147, 150 (2008). Moreover, we accept the hearing judge's conclusions of law if they are supported by the factual findings. *Snyder,* 406 Md. at 28, 956 A.2d at 151.

Judge Souder's conclusions of law are supported by the established facts.

■ On July 18, 2007, Respondent's trust account ending in 8012 had a negative balance of $53.55 because Respondent had deposited insufficient funds to pay for the cost of the checks ordered for the account. That same day, Provident Bank issued an overdraft notice on the account. Therefore, Respondent was aware that any funds deposited in the account would be applied to the shortfall. Respondent, however, failed to deposit any funds into the account until August 7, 2007, when

---

(b) **Burdens of proof.** The petitioner has the burden of proving the averments of the petition by clear and convincing evidence. A respondent who asserts an affirmative defense or a matter of mitigation or extenuation has the burden of proving the defense or matter by a preponderance of the evidence.

16. Maryland Rule 16–759(b)(2)(A) provides in relevant part:

(b) **Review by Court of Appeals.**

\*　　\*　　\*

(2) Findings of fact. (A) If no exceptions are filed. If no exceptions are filed, the Court may treat the findings of fact as established for the purpose of determining appropriate sanctions, if any.

he deposited two settlement checks, one designated as Mc-Manus client funds and another as Cornish client funds; the overdraft amount on account 8012 was then deducted from these funds. Respondent's use of client trust funds to cover the shortfall on the account was an unauthorized use of client funds. We therefore agree with Judge Souder that there is clear and convincing evidence that Respondent violated MRPC 1.15(a).

We also agree with Judge Souder that Respondent violated MRPC 1.15(a) when he disbursed funds to himself from account 8012 to pay fees and expenses for clients without first depositing the settlement funds from those clients. On August 22, 2007, Respondent drafted in his name three checks to pay client fees before depositing the corresponding settlement funds for those clients. First, Respondent drafted check number 112 in the amount of $1,833.33, designated as fees for client Ferguson, but did not deposit the client's settlement funds until October 1, 2007. Second, Respondent drafted check number 114 in the amount of $1,833.33, designated as fees for client Hairson, but did not deposit the client's settlement funds until September 19, 2007. Third, Respondent drafted check number 119 in the amount of $1,505.00, designated as fees for client McManus, but did not deposit sufficient settlement funds to cover the entire payment until August 29, 2007. Respondent deposited these checks on August 23, 2007, even though the requisite settlement funds had not yet been deposited and, therefore, applied funds from other clients to these payments.[17] Respondent repeated this conduct on September 15, 2007, when he drafted checks numbers 174 and 176, in the amounts of $13.00 and $1,650.00, respectively, to pay expenses and fees for client Jones–Coleman prior to depositing any settlement funds in that client's account. Moreover, on October 3, 2007, Respondent drafted

---

17. The funds available on August 23, 2007, were those deposited in trust for clients McManus, Cornish, Chase, Neal, and Lewis. According to bank records, the account should have held at least $8,365.04 on August 23, 2007, and instead held only $4,586.97, reflecting a deficiency of $3,778.07 as of that date.

checks numbers 199 and 200, in the amounts of $35.17 and $2,333.33, respectively, which he designated as expenses and fees for client Smith even though he had not yet deposited that client's settlement funds.

■ These numerous instances in which Respondent withdrew client trust funds to pay other clients' fees, when he should have held those funds in trust, establish by clear and convincing evidence that Respondent also violated Maryland Rule 16–609; B.O.P. § 10–306; and MRPC 8.4(b), (c), and (d). Respondent violated Maryland Rule 16–609, which prohibits the use of client funds for "any unauthorized purpose," because, as we have discussed, he impermissibly disbursed client trust funds to pay himself fees and costs related to settlements before deposit of those funds.

■ These same misappropriations of client funds also violated B.O.P. § 10–306, which prohibits the willful misuse of trust money. "We have said that in order to invoke disciplinary proceedings for a violation of section 10–306, section '10–307 requires that the attorney's violation of [section] 10–306 must be *willful.*'" *Adams,* 349 Md. at 97–98, 706 A.2d at 1085 (internal citations omitted) (emphasis in original). In the context of attorney grievance matters, willfulness is defined as "the voluntary, intentional violation of a known legal duty not requiring a deceitful or fraudulent motive." *Attorney Grievance Comm'n v. Nussbaum,* 401 Md. 612, 636, 934 A.2d 1, 15 (2007) (internal quotations and citations omitted). A hearing judge need not have evidence of a deceitful or fraudulent motive to conclude that an attorney's conduct was willful. Yet, evidence of misappropriation alone, without more, is insufficient to prove willfulness if other evidence supports a finding that the misconduct was merely negligent. *Attorney Grievance Comm'n v. DiCicco,* 369 Md. 662, 682–83, 802 A.2d 1014, 1025–26 (2002); *Glenn,* 341 Md. at 482, 671 A.2d at 480 (citing *McBurney v. State,* 280 Md. 21, 29 & n. 6, 371 A.2d 129, 134 & n. 6 (1977)). In other words, the facts in the record must support a finding, by clear and convincing evidence, of

general intent. *Glenn,* 341 Md. at 482, 671 A.2d at 480 (citing *McBurney,* 280 Md. at 29 & n. 6, 371 A.2d at 134 & n. 6).

Often, in cases involving the willful misappropriation of attorney trust funds, the records contain direct evidence of intentional and knowing misconduct. *See, e.g., Thomas,* 409 Md. at 156–61, 973 A.2d at 206–08 (quoting attorney testimony acknowledging that he was aware that the client to whom he had attributed a disbursement of fees had never deposited any money in the trust account); *Nussbaum,* 401 Md. at 639, 934 A.2d at 16 ("Respondent wrote checks from his escrow account and deposited the funds into his operating account in order to cover personal expenses. When it came time for Respondent to disburse funds from the escrow account to proper payees, he would 'borrow' funds from other clients[.]"); *Attorney Grievance Comm'n v. Butler,* 395 Md. 1, 12–13, 909 A.2d 226, 232–33 (2006) ("Respondent used his Attorney Trust Account for personal and business matters, making payments to Pepco, Verizon, Global pay Global STL, and American Express Collection."). An attorney's intent, however, may be inferred from circumstantial evidence. *See Thomas,* 409 Md. at 159, 973 A.2d at 208 (sustaining hearing judge's conclusion that attorney's misappropriation was willful because he had withdrawn funds from clients who had contributed significantly less, or not at all, to the account); *Attorney Grievance Com'n v. Zakroff,* 387 Md. 603, 627, 645–46, 876 A.2d 664, 678–79, 690 (2005) (finding willful misappropriation on the grounds that the attorney's repeated conduct, methodology, and control over the account belied the attorney's claims of ignorance of account balances). Moreover, in making the determination that an attorney's misconduct was willful, the hearing judge may choose the evidence upon which to rely and, as long as the record supports the corresponding finding, we will not disturb the hearing judge's decision. *Thomas,* 409 Md. at 156, 973 A.2d at 206 ("[T]he factual determination of whether Respondent engaged in conduct involving, dishonesty, fraud, deceit or misrepresentation was within the province of the hearing judge, to be decided after consideration of character testimony and other evidence[.]");

*Attorney Grievance Comm'n v. Powell,* 328 Md. 276, 292, 614 A.2d 102, 110 (1992).

We conclude that Judge Souder's determination that Respondent willfully misappropriated client trust funds is supported by clear and convincing evidence. The record shows that Respondent was the sole authorized signer on accounts 7814 and 8012. He, therefore, was solely responsible for all deposits and disbursements from the accounts and, as such, had notice of all account activity. Further, notwithstanding Bar Counsel's letters to Respondent notifying him of the July 20, 2007, and September 20, 2007, overdraft notices on account 8012, Respondent continued to disburse funds from that account to pay putative client fees before receiving the settlement funds for those clients.

Given Respondent's direct supervision of the accounts and account activities, we accept as reasonable Judge Souder's ultimate finding that Respondent was aware of the account balances each time his trust obligation exceeded the trust account balance and, therefore, willfully misappropriated client funds to cover those shortfalls. Likewise, Respondent's control of the trust accounts coupled with his repeated disbursement of fees from the account before receiving the corresponding settlement funds reasonably support Judge Souder's ultimate finding that Respondent knew he had not yet received the requisite settlement funds and, therefore, willfully misappropriated client funds. The willfulness of Respondent's conduct supports a violation of B.O.P. § 10–306.

Respondent's violation of B.O.P. § 10–306 supports a violation of MRPC 8.4(b), which proscribes as professional misconduct "a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer[.]" MRPC 8.4(b). Respondent's violation of B.O.P. § 10–603 constitutes a criminal act. *See* B.O.P. § 10–606(b).[18] As Judge Souder

---

18. Section 10–606(b) provides:

(b) *Attorney trust accounts.*—A person who willfully violates any provision of Subtitle 3, Part I of this title, except for the requirement that a lawyer deposit trust moneys in an attorney trust account for

noted, to conclude that an attorney has violated MRPC 8.4(b), the attorney need not have been convicted of a criminal act; the hearing judge need only find clear and convincing evidence that the attorney committed the underlying offense. *Garland,* 345 Md. at 394–95, 692 A.2d at 471.

For the same reasons that Respondent's willful misappropriation violated B.O.P. § 10–306 and MRPC 8.4(b), that conduct violated MRPC 8.4(c). Respondent intentionally misrepresented that he had earned the funds he disbursed to himself as fees from clients who had no trust funds in the account, and such conduct inherently involves misrepresentation and dishonesty. *See Thomas,* 409 Md. at 163, 973 A.2d at 210 (concluding that an attorney's violation of B.O.P. § 10–306 gave rise to a violation of MRPC 8.4(c)). Moreover, Respondent's intentional misappropriation was conduct prejudicial to the administration of justice and, thus, a violation of MRPC 8.4(d).

 Respondent violated Maryland Rule 16–606 by failing to maintain his trust accounts under one of the rule's requisite designations. The account titles, "Law Office of George S. Jarosinski" and "George S. Jarosinski, P.A., Escrow Account" are insufficient to provide notice, as required by Maryland Rule 16–606, that the accounts were attorney trust accounts maintained for the purpose of safekeeping client funds. Finally, Respondent's failure to respond timely to Bar Counsel's inquiries and to cooperate fully with Bar Counsel's investigation was a failure "to respond to a lawful demand for information from [a] ... disciplinary authority" and thereby violated MRPC 8.1(b).

### III.

 We are left only to determine the appropriate sanction for Respondent's misconduct. When sanctioning an

---

charitable purposes under § 10–303 of this title, is guilty of a misdemeanor and on conviction is subject to a fine not exceeding $ 5,000 or imprisonment not exceeding 5 years or both.

attorney, we seek not to punish but to "protect the public and the public's confidence in the legal profession" and to deter other attorneys from the same misconduct. *Attorney Grievance Comm'n v. Kreamer*, 404 Md. 282, 348, 946 A.2d 500, 539 (2008). Accordingly, "[t]he severity of the sanction depends on several things, including 'the circumstances of each case, the intent [with] which the acts were committed, the gravity, nature and effects of the violations as well as any mitigating factors.'" *Attorney Grievance Comm'n v. Nichols*, 405 Md. 207, 217, 950 A.2d 778, 785 (2008) (quoting *Ward*, 394 Md. at 32–33, 904 A.2d at 496).

 Petitioner recommends disbarment as the appropriate sanction for Respondent's misconduct. We agree.

Paramount among Respondent's multiple violations are his violations of MRPC 8.4(b), 8.4(c), and B.O.P. § 10–306, by repeatedly and intentionally misappropriating client funds, and MRPC 8.1(b) by failing on at least three occasions to respond timely, if at all, to Bar Counsel's inquiries. *See Attorney Grievance Comm'n v. Brown*, 380 Md. 661, 668–70, 846 A.2d 428, 432–33 (2004) (disbarring attorney who misappropriated one client's funds and who failed to respond to Bar Counsel's letters). Respondent's intentional misappropriation is especially egregious because it "'is an act infected with deceit and dishonesty.'" *Butler*, 395 Md. at 15, 909 A.2d at 234 (quoting *Attorney Grievance Comm'n v. Vanderlinde*, 364 Md. 376, 406, 773 A.2d 463, 480 (2001)).

 This Court has held consistently that "acts of dishonesty, fraud, or misleading behavior frequently result in a sanction of disbarment." *Thomas*, 409 Md. at 171, 973 A.2d at 216; *see also Attorney Grievance Comm'n v. Ward*, 396 Md. 203, 218, 913 A.2d 41, 50 (2006) ("[D]isbarment ordinarily should be the sanction for intentional dishonest conduct.") (internal quotations and citations omitted). Professional misconduct of this nature warrants such an extreme sanction because, "[u]nlike matters relating to competency, diligence and the like, intentional dishonest conduct is closely entwined with the most important matters of basic character to such a

degree as to make intentional dishonest conduct by a lawyer almost beyond excuse." *Vanderlinde,* 364 Md. at 418, 773 A.2d at 488.

The intentional misappropriation of entrusted funds merits disbarment not only because it is inherently dishonest but also because, "even without actual loss, . . . the failure to keep client funds separate subjects the funds to the claims of creditors of the lawyer." *Glenn,* 341 Md. at 489, 671 A.2d at 483 ("We have consistently found misappropriation by an attorney of entrusted funds, be it intentional, knowing, or negligent, to be of great concern, representing serious professional misconduct."); *see also Thomas,* 409 Md. at 174–75, 973 A.2d at 217–18 (holding that disbarment was the appropriate sanction for an attorney who withdrew trust funds for clients who had contributed substantially less, or not at all, to the account); *Brown,* 380 Md. at 666–67, 669–70, 846 A.2d at 431, 433 (disbarring attorney who withdrew settlement funds for an unauthorized purpose, did not properly title trust account, and failed to respond to Bar Counsel's letters).

Although we have noted that an attorney who has misappropriated funds may avoid disbarment under compelling extenuating circumstances justifying a lesser sanction, *Ward,* 396 Md. at 218, 913 A.2d at 50, Respondent did not present any evidence before the hearing judge that a less severe sanction should be imposed. Furthermore, Respondent did not fully cooperate with Bar Counsel's investigation and did not participate or appear in the disciplinary proceedings prior to the hearing before this Court. We do not overlook the matters that Respondent proffered during that hearing. A respondent, however, must establish by a preponderance of the evidence any fact offered in his defense, and Respondent's verbal statements to this Court, without more, do not satisfy this burden. *See Brown,* 380 Md. at 669, 846 A.2d at 433 (overruling respondent's exceptions, which consisted of a mere denial of the alleged misappropriation and failure to establish properly his attorney trust account).

In light of Respondent's numerous instances of misappropriation and other professional misconduct, we conclude that the only appropriate sanction in this case is disbarment.

IT IS SO ORDERED. RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16–761, FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST GEORGE S. JAROSINSKI.