118 A.3d 995

### ATTORNEY GRIEVANCE COMMISSION OF MARYLAND

v.

### Melissa Donnelle GRAY.

Misc. Docket AG Nos. 56, Sept. Term, 2013, 18, 26, Sept. Term, 2014.

Court of Appeals of Maryland.

July 27, 2015.

JaCina N. Stanton, Assistant Bar Counsel (Glenn M. Grossman, Bar Counsel, Attorney Grievance Commission of Maryland), for Petitioner.

No argument on behalf of Respondent.

Argued before: BARBERA, C.J., * HARRELL, GREENE, ADKINS, McDONALD, WATTS, and IRMA RAKER (Retired, Specially Assigned), JJ.

GREENE, J.

Bar Counsel asks this Court to review the misconduct of an attorney with a rather lengthy history with the attorney disciplinary process. Indeed, this case represents the fourth opportunity for us to consider an appropriate sanction for Melissa D. Gray ("Respondent" or "Gray"), who is currently indefinitely suspended from the practice of law. *See Att'y Grievance Comm'n v. Gray*, 421 Md. 92, 25 A.3d 219 (2011) (*"Gray I"*) (entering reprimand by consent for violations of Maryland Lawyers' Rules of Professional Conduct ("MLRPC" or "Rule") 1.3, 1.4, and 8.1(b)); *Att'y Grievance Comm'n v. Gray*, 433 Md. 516, 72 A.3d 174 (2013) (*"Gray II"*) (ordering sixty day suspension for violations of MLRPC 1.3, 1.4, 1.15(e), and 8.1(b)); *Att'y Grievance Comm'n v. Gray*, 436 Md. 513, 83 A.3d 786 (2014) (*"Gray III"*) (imposing sanction of indefinite suspension from the practice of law for violations of MLRPC 1.1, 1.3, 3.2, and 8.1(b)).

In the instant case, the Attorney Grievance Commission of Maryland ("Petitioner"), acting pursuant to Maryland Rule 16–751(a), directed Bar Counsel to file three Petitions for Disciplinary or Remedial Action against Gray on October 23, 2013, June 2, 2014, and July 10, 2014, respectively. These petitions arise out of Respondent's representation of four individuals in separate divorce matters: *Pazura v. Pazura; Lafalaise v. Pierre; Garner v. Garner;* and *Antonelli v. Antonelli.* On Petitioner's motion, these complaints were consolidated by this Court on September 9, 2014.

---

* Harrell, J., now retired, participated in the hearing and conference of the case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

Petitioner charged Respondent with numerous MLRPC violations, specifically Rules 1.1 (Competence),[1] 1.2 (Scope of Representation and Allocation of Authority Between Client and Lawyer),[2] 1.3 (Diligence),[3] 1.4 (Communication),[4] Rule 1.5 (Fees),[5] Rule 1.15 (Safekeeping Property),[6] 1.16 (Declining or

---

1. Under MLRPC 1.1 "[a] lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation."

2. MLRPC 1.2 provides in relevant part:
 (a) Subject to paragraphs (c) and (d), a lawyer shall abide by a client's decisions concerning the objectives of the representation and, when appropriate, shall consult with the client as to the means by which they are to be pursued. A lawyer may take such action on behalf of the client as is impliedly authorized to carry out the representation. A lawyer shall abide by a client's decision whether to settle a matter.

3. Pursuant to MLRPC 1.3 "[a] lawyer shall act with reasonable diligence and promptness in representing a client."

4. MLRPC 1.4 provides that:
 (a) A lawyer shall:
 (1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in Rule 1.0(f), is required by these Rules;
 (2) keep the client reasonably informed about the status of the matter;
 (3) promptly comply with reasonable requests for information; and
 (4) consult with the client about any relevant limitation on the lawyer's conduct when the lawyer knows that the client expects assistance not permitted by the Maryland Lawyers' Rules of Professional Conduct or other law.
 (b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

5. Under MLRPC 1.5 "[a] lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses."

6. MLRPC 1.15 provides in pertinent part that:
 (a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained pursuant to Title 16, Chapter 600 of the Maryland Rules, and records shall be created and maintained in accor-

Terminating Representation),[7] Rule 8.1 (Bar Admission and Disciplinary Matters),[8] and Rule 8.4 (Misconduct).[9] Respondent was also charged with violations of Maryland Rules 16–604 (Trust account—Required deposits),[10] 16–606.1 (Attorney

dance with the Rules in that Chapter. Other property shall be identified specifically as such and appropriately safeguarded, and records of its receipt and distribution shall be created and maintained. Complete records of the account funds and of other property shall be kept by the lawyer and shall be preserved for a period of at least five years after the date the record was created.

\* \* \*

(c) Unless the client gives informed consent, confirmed in writing, to a different arrangement, a lawyer shall deposit legal fees and expenses that have been paid in advance into a client trust account and may withdraw those funds for the lawyer's own benefit only as fees are earned or expenses incurred.

7. In relevant part, MLRPC 1.16 provides that:
 [A] lawyer shall not represent a client or, where representation has commenced, shall withdraw from the representation of a client if: (1) the representation will result in violation of the [MLRPC] or other law .... (d) Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee or expense that has not been earned or incurred. The lawyer may retain papers relating to the client to the extent permitted by other law.

8. Under MLRPC 8.1 "a lawyer ... in connection with a disciplinary matter, shall not: ... (b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this Rule does not require disclosure of information otherwise protected by Rule 1.6."

9. MLRPC 8.4 provides, in pertinent part, that:
 It is professional misconduct for a lawyer to: (a) violate or attempt to violate the [MLRPC], knowingly assist or induce another to do so, or do so through the acts of another; (b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects; (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation; [or] (d) engage in conduct that is prejudicial to the administration of justice.

10. Maryland Rule 16–604 provides that:
 Except as otherwise permitted by rule or other law, all funds, including cash, received and accepted by an attorney or law firm in this

trust account record-keeping),[11] and 16–609 (Prohibited transactions).[12] Lastly, Petitioner charged Respondent with violating Section 10–306 of the Business Occupations and Professions Article ("BOP") of the Maryland Code (Misuse of trust money).[13]

---

State from a client or third person to be delivered in whole or in part to a client or third person, unless received as payment of fees owed the attorney by the client or in reimbursement for expenses properly advanced on behalf of the client, shall be deposited in an attorney trust account in an approved financial institution. This Rule does not apply to an instrument received by an attorney or law firm that is made payable solely to a client or third person and is transmitted directly to the client or third person.

11. In part, Maryland Rule 16–606.1 mandates that "[t]he following records shall be created and maintained for the receipt and disbursement of funds of clients or of third persons:
(1) Attorney trust account identification. An identification of all attorney trust accounts maintained, including the name of the financial institution, account number, account name, date the account was opened, date the account was closed, and an agreement with the financial institution establishing each account and its interest-bearing nature.
(2) Deposits and disbursements. A record for each account that chronologically shows all deposits and disbursements, as follows:
(A) for each deposit, a record made at or near the time of the deposit that shows (i) the date of the deposit, (ii) the amount, (iii) the identity of the client or third person for whom the funds were deposited, and (iv) the purpose of the deposit;
(B) for each disbursement, including a disbursement made by electronic transfer, a record made at or near the time of disbursement that shows (i) the date of the disbursement, (ii) the amount, (iii) the payee, (iv) the identity of the client or third person for whom the disbursement was made (if not the payee), and (v) the purpose of the disbursement;
(C) for each disbursement made by electronic transfer, a written memorandum authorizing the transaction and identifying the attorney responsible for the transaction."

12. Maryland Rule 16–609 provides in part that "[a]n attorney or law firm may not borrow or pledge any funds required by the Rules in this Chapter to be deposited in an attorney trust account, obtain any remuneration from the financial institution for depositing any funds in the account, or use any funds for any unauthorized purpose."

13. Pursuant to § 10–306 "[a] lawyer may not use trust money for any purpose other than the purpose for which the trust money is entrusted to the lawyer."

We referred the instant matters to Judge Susan Souder of the Circuit Court for Baltimore County for an evidentiary hearing and to issue findings of fact and conclusions of law pursuant to Md. Rule 16–757. Respondent failed to respond to any of the above-mentioned petitions. Following Respondent's failure to respond, an Order of Default was entered by the hearing judge on September 22, 2014. After conducting a hearing, which Respondent failed to appear for, on November 3 and 5, 2015 Judge Souder issued Findings of Fact and Conclusions of Law in which she found, by clear and convincing evidence, that Respondent violated, collectively, MLRPC 1.1, 1.2, 1.3, 1.4, 1.5, 1.15, 1.16, 8.1(b), and 8.4(a), Maryland Rules 16–604, 16–606.1, and 16–609, and BOP § 10–306.

## I. FINDINGS OF FACT AND CONCLUSIONS OF LAW

Concluding that Respondent had violated (1) MLRPC 1.1, 1.3, 1.4, 8.1(b), and 8.4(a) in the Pazura matter; (2) MLRPC 1.1, 1.3, 1.4, 1.5, 1.16, 8.1(b), and 8.4(a) in the Lafalaise matter; and (3) MLRPC 1.1, 1.2, 1.3, 1.4, 1.5, 1.15, 1.16, 8.1(b), and 8.4(a), Maryland Rules 16–604, 16–606.1, and 16–609, and BOP § 10–306 in both the Garner and Antonelli matters, Judge Souder issued the following:

### *PAZURA V. PAZURA: FINDINGS OF FACT*

\* \* \*

Respondent became a member of the Maryland Bar on June 14, 1988. On August 15, 2013, the Court of Appeals suspended Respondent from the practice of law in Maryland for a period of sixty days, effective September 15, 2013. On January 24, 2014, the Court of Appeals indefinitely suspended Respondent from the practice of law in Maryland, effective thirty days from the date of its opinion. Respondent therefore remains indefinitely suspended from the practice of law.

Respondent represented Miranda Pazura in connection with her divorce case, *Pazura v. Pazura* in the Circuit Court for Baltimore County. After Ms. Pazura retained

Respondent in October 2008, Respondent advised her to withdraw $83,700 from a home equity line of credit. Respondent did not explain to Ms. Pazura what the potential ramifications of this act could be.

After Ms. Pazura withdrew this money on Respondent's advice, the Circuit Court entered a temporary restraining order, preventing Ms. Pazura from using the funds. Respondent consented to an order requiring the funds to be held in her escrow account. As a consequence of this order, the $83,700 was not available to Ms. Pazura to pay for her living expenses.

Although Ms. Pazura promptly tendered a check for $83,700 to Respondent, Respondent did not deposit this check in her escrow account until several months later.

In addition, Respondent failed to file timely responses to discovery requests, resulting in the imposition of sanctions against Ms. Pazura. Respondent also failed to file discovery requests on behalf of Ms. Pazura until long after the discovery deadline in the case had elapsed. Respondent therefore failed to obtain information regarding Ms. Pazura's husband's financial status.

Respondent also failed to return Ms. Pazura's telephone calls seeking the status of her case. Respondent did not keep Ms. Pazura informed of the status of the case and did not provide Ms. Pazura with copies of pleadings, correspondence, and court orders.

Respondent also failed to prepare for trial. She did not obtain expert witnesses, including a vocational rehabilitation expert or a forensic accountant, to testify at trial.

Finally, while Respondent received letters from the Office of Bar Counsel requesting that she respond to Ms. Pazura's complaint, Respondent failed to submit a substantive written response to these inquiries of Bar Counsel.

### *PAZURA V. PAZURA: CONCLUSIONS OF LAW*

Petitioner alleges that Respondent violated the following Maryland Lawyers' Rules of Professional Conduct

("MLRPC"): 1.1 ("Competence"), 1.3 ("Diligence"), 1.4 ("Communication"), 1.15 ("Safekeeping Property"), 8.1(b) ("Bar Admission and Disciplinary Matters"), and 8.4 ("Misconduct").

The court finds that there is clear and convincing evidence that Respondent violated each of these Rules except MLRPC 1.15.

With respect to MLRPC 1.1 and 1.3, Respondent's failure to pursue Ms. Pazura's case demonstrated a lack of both competence and diligence. The same lack of thoroughness and preparedness that demonstrates Respondent's violation of MLRPC 1.1 also demonstrates her lack of the diligence required of her by MLRPC 1.3.

Respondent failed to communicate adequately with Ms. Pazura as is required by MLRPC 1.4. Respondent failed to return Ms. Pazura's telephone calls, did not keep Ms. Pazura informed of the status of her case, and did not provide Ms. Pazura with copies of pleadings, correspondence, or court orders. Accordingly, Respondent violated MLRPC 1.4(a) and 1.4(b).

Furthermore, by failing to respond to inquiries from Bar Counsel, Respondent violated MLRPC 8.1(b).

Because Respondent violated MLRPC 1.1, 1.3, 1.4, and 8.1(b), she also violated MLRPC 8.4(a).

However, this court does not find that there is clear and convincing evidence that Respondent violated MLRPC 1.15. While Respondent failed promptly to deposit the check she received from Ms. Pazura in her escrow account, this failure does not constitute a failure to keep client property separate from the lawyer's property. Petitioner presented no evidence that Respondent ever commingled any funds from Ms. Pazura's check with Respondent's own funds. Petitioner also presented no evidence that Respondent placed Ms. Pazura's funds in an account other than an escrow account. Rather, Petitioner's sole allegation with respect to a violation of this Rule is that Petitioner did not promptly deposit the check she received from Ms. Pazura. While promptly

depositing such a check in an escrow account certainly constitutes good practice, nothing in MLRPC 1.15 *mandates* the prompt deposit of such funds. Therefore, the Court does not find that Respondent violated MLRPC 1.15 in the matter of *Pazura v. Pazura.*

### *LAFALAISE V. PIERRE:* *FINDINGS OF FACT*

\* \* \*

Respondent represented Pensione Lafalaise in a divorce case in which Mr. Lafalaise had previously been represented by other counsel. A judgment of divorce had already been entered in the case, but issues regarding marital property had not yet been resolved by the court.

Respondent entered her appearance on behalf of Mr. Lafalaise on July 28, 2011. On April 25, 2012, the court listened—in open court—to the outlining of a consent agreement disposing of issues relating to marital property. This agreement required the parties to prepare appropriate Qualified Domestic Relations Orders ("QDROs") to effectuate the division of the parties' retirement benefits. In addition, the agreement required Mr. Lafalaise's ex-wife to convey certain real property to Mr. Lafalaise.

On May 30, 2012, Respondent wrote to the court, requesting that a written order be entered to formalize the consent agreement placed on the record in the previous month. The court entered a written order on that same date.

Following this date, Respondent failed to take any additional steps towards obtaining the real property which was to be conveyed to Mr. Lafalaise or towards insuring the execution of the required QDROs.

Furthermore, throughout the course of her representation of Mr. Lafalaise, Respondent failed adequately to communicate with her client. Respondent often failed to respond to Mr. Lafalaise's telephone messages and to other communications from her client seeking information on the status of her case. Respondent also ignored Mr. Lafalaise's

requests to make an appointment so that he could meet with Respondent personally.

Mr. Lafalaise paid Respondent approximately $15,000.00 for this representation, but Respondent failed to return any unearned portion of that fee. Respondent admitted that she did not provide Mr. Lafalaise with any legal services of value in exchange for the fee she received.

Following termination of the representation and in spite of numerous requests from Mr. Lafalaise, Respondent failed to return original documents to her client

Finally, Respondent failed to respond to numerous inquiries and lawful requests for information made by the Office of Bar Counsel concerning Mr. Lafalaise's complaint.

### LAFALAISE V. PIERRE: CONCLUSIONS OF LAW

Petitioner alleges that Respondent violated the following Rules: 1.1 ("Competence"), 1.3 ("Diligence"), 1.4 ("Communication"), 1.5 ("Fees"), 1.16 ("Declining or Terminating Representation"), 8.1(b) ("Bar Admission and Disciplinary Matters"), and 8.4 ("Misconduct").

The court finds that there is clear and convincing evidence that Respondent violated each of these Rules.

With respect to MLRPC 1.1 and 1.3, Respondent's failure to pursue Mr. Lafalaise's case demonstrated a lack of both competence and diligence. Respondent failed to prepare QDROs in Mr. Lafalaise's case, failed to assist her client in obtaining the real property due to him under the consent agreement, and generally provided no legal services of value. This demonstrates a lack of competence which violates MLRPC 1.1. The same lack of thoroughness and preparedness that demonstrates Respondent's violation of MLRPC 1.1 also demonstrates her lack of the diligence required of her by MLRPC 1.3.

Respondent failed to communicate adequately with Mr. Lafalaise as is required by MLRPC 1.4. Respondent often failed to respond to Mr. Lafalaise's telephone messages and to

other communications from her client seeking information of the status of h[is] case. Respondent also ignored Mr. Lafalaise's requests to make an appointment so that he could meet with Respondent personally. Accordingly, Respondent violated MLRPC 1.4(a).

The fee paid to Respondent by Mr. Lafalaise, while not unreasonable on its face, was unreasonable in fact, as Respondent failed to provide Mr. Lafalaise with any legal services of value. The charging of an unreasonable fee violates MLRPC 1.5(a).

In addition, Respondent's failure to return the unearned portion of the fee she received and failure to return to Mr. Lafalaise the original documents—"papers and property to which the client is entitled"—which he requested constitutes violations of MLRPC 1.16(d).

Furthermore, by failing to respond to inquiries from Bar Counsel, Respondent violated MLRPC 8.1(b).

Finally, because Respondent violated MLRPC 1.1, 1.3, 1.4, 1.5, 1.16, and 8.1(b), she also violated MLRPC 8.4(a).

### GARNER V. GARNER: FINDINGS OF FACT

\* \* \*

Zachariah Garner retained Respondent on March 1, 2013 for assistance in a divorce case pending in Howard County. Mr. Garner paid Respondent $6,000.00 for this representation.

Respondent failed to submit to the Court an updated Financial Statement that Mr. Garner had completed in Respondent's presence. Respondent was also unprepared for a *pendente lite* hearing held June 4, 2013, despite the fact that Mr. Garner had already provided Respondent with his bills and other financial information. Because Respondent was unprepared for the hearing, the result of that hearing was unfavorable for Mr. Garner.

In addition, Respondent failed to send discovery responses to opposing counsel and failed to file any response to related discovery motions filed by opposing counsel.

Respondent also failed to keep Mr. Garner informed about his case and failed to respond to request for information made by her client. Following the *pendente lite* hearing, Mr. Garner asked Respondent several questions about Respondent's failure to submit to the court the updated Financial Statement that he had completed, about the nature of the results of the hearing, and about a potential appeal of the result. Respondent failed to provide a response to any of these questions. Respondent's only response to Mr. Garner's inquiries was to advise him to file for bankruptcy in order to resolve the financial concerns which the result of the hearing caused for him.

Respondent also failed to respond to emails which Mr. Garner sent her, in spite of the fact that many of these emails were sent in response to emails sent by Respondent.

Further, Respondent failed to return Mr. Garner's phone calls and voicemail messages (including when the phone calls were in response to phone calls from Respondent) and failed to inform Mr. Garner about the discovery motions that had been filed by opposing counsel.

Ultimately, Respondent abandoned the representation. As a result, Mr. Garner was forced to retain a new attorney. In spite of the limited services which she had performed for Mr. Garner and in spite of her eventual abandonment of her client, Respondent failed to return any of the $6000.00 fee which Mr. Garner had paid to her.

Respondent failed to deposit any portion of the $6000.00 fee into an Attorney Trust Account ("ATA"). Respondent did not have Mr. Garner's informed consent, obtained in writing, to an arrangement which would have allowed her to proceed in a fashion other than by depositing the sum in an ATA.

Respondent failed to maintain appropriate trust account records as required by Md. Rule 16–606.1. Respondent

failed to create and maintain records concerning disbursements made from her trust account and did not properly identify the payee of any disbursements, the person for whom any disbursements were made, or the purpose of any disbursements.

Finally, Respondent failed to respond to lawful requests for information made by the Office of Bar Counsel. On October 3, 2013, Assistant Bar Counsel James Botluk sent a letter to Respondent requesting a response to the complaint filed by Mr. Garner. Respondent failed to respond to this letter. Assistant Bar Counsel Botluk thereafter sent a second letter, dated October 30, 2013, via certified mail, with return receipt requested. Respondent also failed to respond to this second letter. Therefore, a third letter was sent on December 16, 2013. Respondent did not respond to this letter either. A fourth letter was then mailed, again via certified mail, return receipt requested on December 30, 2013. Respondent did not respond to this fourth letter.

Eventually, on January 15, 2014, Assistant Bar Counsel James Gaither sent William M. Ramsey, an investigator with Petitioner, to hand-deliver a new letter to Respondent. Mr. Ramsey attempted several times to deliver this letter to Respondent at her office, but met with no success until February 20, 2014. On that date, Respondent informed Mr. Ramsey that she would be in contact with Assistant Bar Counsel Gaither, but Respondent has not yet made any contact with the Office of Bar Counsel.

### *GARNER V. GARNER: CONCLUSIONS OF LAW*

Petitioner alleges that Respondent violated the following Rules: 1.1 ("Competence"), 1.2 ("Scope of Representation and Allocation of Authority Between Lawyer and Client"), 1.3 ("Diligence"), 1.4 ("Communication"), 1.5 ("Fees"), 1.15 ("Safekeeping Property"), 1.16 ("Declining or Terminating Representation"), 8.1(b) ("Bar Admission and Disciplinary Matters"), and 8.4 ("Misconduct"). In addition, Petitioner alleges that Respondent violated Md. Rules 16–604 ("Trust Account—Required deposits"), 16–606.1 ("Attorney trust ac-

count record-keeping"), and 16–609 ("Prohibited transactions"). Finally, Petitioner alleges that Respondent violated Md.Code Ann., Bus. Occ. & Prof. § 10–306 ("Misuse of trust money").

With respect to MLRPC 1.1 and 1.3, Respondent's failure to pursue Mr. Garner's case demonstrated a lack of both competence and diligence. Respondent failed to submit an updated Financial Statement to the court, was unprepared for a *pendente lite* hearing, failed to provide discovery to opposing counsel, and failed to respond to discovery motions filed by opposing counsel. In addition, Respondent eventually abandoned her representation of Mr. Garner entirely. These actions demonstrate a lack of competence in violation of MLRPC 1.1. The same lack of thoroughness and preparedness that demonstrates Respondent's violation of MLRPC 1.1 also demonstrates her lack of the diligence required by MLRPC 1.3.

With Respect to MLRPC 1.2, Respondent's total failure to pursue Mr. Garner's case competently and diligently worked a frustration of Mr. Garner's intentions concerning the objective of the representation. This failure to pursue Mr. Garner's objectives violates MLRPC 1.2.

Respondent also failed to communicate adequately with Mr. Garner as is required by MLRPC 1.4. Respondent failed to respond to Mr. Garner's inquiries following the *pendente lite* hearing, failed to reply to emails sent by Mr. Garner, and failed to return Mr. Garner's phone calls. Accordingly, Respondent violated MLRPC 1.4(a).

The fee paid to Respondent by Mr. Garner, while not unreasonable on its face, was unreasonable in fact, as Respondent failed to provide Mr. Garner with adequate representation. The charging of an unreasonable fee violates MLRPC 1.5(a).

Respondent's failure to deposit the $6000.00 fee she received from Mr. Garner in an ATA violates multiple provisions of the law. As Respondent did not have her client's informed consent, confirmed in writing, to an arrangement other than one which would require her to deposit unearned

fees in an ATA, and as Respondent did not perform sufficient services to warrant the $6000.00 she had received, Respondent violated MLRPC 1.15(c). This conduct also violates Md. Rule 16–604 and 16–609(a) and is in violation of the prohibition contained in Md.Code Ann., Bus. Occ. & Prof. § 10–306 against a lawyer using "trust money for any purpose other than the purpose for which the trust money is entrusted to the lawyer."

Furthermore, because, as detailed above, Respondent failed to maintain proper account records, her conduct violated Md. Rule 16–606.1.

In addition, Respondent's failure to return the unearned portion of the fee she received in Mr. Garner's matter and her abandonment of Mr. Garner's case without notice to him constitute violations of MLRPC 1.16(d).

As this court has previously held, above, so it is in Mr. Garner's case: by failing to respond to repeated inquiries from Bar Counsel, Respondent violated MLRPC 8.1(b).

Finally, because Respondent violated MLRPC 1.1, 1.2, 1.3, 1.4, 1.5, 1.15, 1.16, and 8.1, she also violated MLRPC 8.4(a).

### ANTONELLI V. ANTONELLI: FINDINGS OF FACT

\* \* \*

Pamela Antonelli retained Respondent in March 2011 for representation in a divorce case. Ms. Antonelli paid Respondent $6980.00 in furtherance of this representation.

Respondent failed adequately to communicate with Ms. Antonelli throughout the representation and eventually abandoned the representation altogether. In spite of this, Respondent has not returned any portion of the fee paid to her by Ms. Antonelli.

Respondent failed to deposit any portion of the $6980.00 into an ATA. Respondent did not perform any legal services of value for her client and therefore did not earn any portion of this fee which was not deposited in an ATA. Respondent did not have Ms. Antonelli's informed consent,

obtained in writing, to an arrangement other than one which would have required Respondent to deposit her unearned fees in an ATA.

Respondent failed to maintain appropriate records for her ATA, as required by Md. Rule 16–606.1. Respondent failed to create and maintain records concerning disbursements made from her trust account and did not properly identify the payee of any disbursements, the person on whose behalf any disbursements were made, or the purpose of any disbursements made.

Finally, Respondent failed to respond to lawful request for information made by the Office of Bar Counsel. On February 12, 2014, Assistant Bar Counsel James Gaither sent a letter to Respondent requesting her response to the complaint filed by Ms. Antonelli. Respondent failed to respond to this letter. Therefore, on March 4, 2014, Mr. Gaither sent another letter to Respondent via certified mail, return receipt requested. Respondent did not respond to this letter either. In fact, to date, Respondent has yet to provide any response at all to the Office of Bar Counsel concerning Ms. Antonelli's complaint.

### ANTONELLI V. ANTONELLI: CONCLUSIONS OF LAW

Petitioner alleges that Respondent violated the following Rules: 1.1 ("Competence"), 1.2 ("Scope of Representation and Allocation of Authority Between Lawyer and Client"), 1.3 ("Diligence"), 1.4 ("Communication"), 1.5 ("Fees"), 1.15 ("Safekeeping Property"), 1.16 ("Declining or Terminating Representation"), 8.1(b) ("Bar Admission and Disciplinary Matters"), and 8.4 ("Misconduct"). In addition, Petitioner alleges that Respondent violated Md. Rules 16–604 ("Trust Account—Required deposits"), 16–606.1 ("Attorney trust account record-keeping"), and 16–609 ("Prohibited transactions"). Finally, Petitioner alleges that Respondent violated Md.Code Ann., Bus. Occ. & Prof. § 10–306 ("Misuse of trust money").

With respect to MLRPC 1.1 and 1.3, Respondent's failure to pursue Ms. Antonelli's case demonstrated a lack of both

competence and diligence. Respondent abandoned her representation of Ms. Antonelli and provided her with no services of legal value. These actions demonstrate a lack of competence in violation of MLRPC 1.1. The same lack of thoroughness and preparedness that demonstrates Respondent's violation of MLRPC 1.1 also demonstrates her lack of the diligence required by MLRPC 1.3.

With Respect to MLRPC 1.2, Respondent's failure to pursue Ms. Antonelli's case competently and diligently worked a frustration of Ms. Antonelli's intentions concerning the objective of the representation. This failure to pursue Ms. Antonelli's objectives violates MLRPC 1.2.

Respondent also failed to communicate adequately with Ms. Antonelli as is required by MLRPC 1.4. Respondent failed to communicate with Ms. Antonelli regarding the status of her case, as the Rule requires. Accordingly, Respondent violated MLRPC 1.4(a).

The fee paid to Respondent by Ms. Antonelli, while not unreasonable on its face, was unreasonable in fact, as Respondent failed to provide Ms. Antonelli with adequate representation. The charging of an unreasonable fee violates MLRPC 1.5(a).

Respondent's failure to deposit the $6980.00 fee she received from Ms. Antonelli in an ATA violates multiple provisions of the law. As Respondent did not have her client's informed consent, confirmed in writing, to an arrangement other than one which would require her to deposit unearned fees in an ATA, and as Respondent did not perform sufficient services to warrant the $6980.00 she had received, Respondent violated MLRPC 1.15(c). This conduct also violates Ms. Rule 16–604 and 16–609(a) and is in violation of the prohibition contained in Md.Code Ann., Bus. Occ. & Prof. § 10–306 against a lawyer using "trust money for any purpose other than the purpose for which the trust money is entrusted to the lawyer."

Furthermore, because, as detailed above, Respondent failed to maintain proper account records, her conduct violated Md. Rule 16–606.1.

In addition, Respondent's failure to return the unearned portion of the fee she received in Ms. Antonelli's matter and her abandonment of Ms. Antonelli's case without notice to her constitute violations of MLRPC 1.16(d).

Furthermore, by failing to respond to repeated inquiries from Bar Counsel, Respondent violated MLRPC 8.1(b).

Finally, because Respondent violated MLRPC 1.1, 1.2, 1.3, 1.4, 1.5, 1.15, 1.16, and 8.1, she also violated MLRPC 8.4(a).

(Citations omitted).

## II. DISCUSSION

In attorney discipline proceedings, this Court has original and complete jurisdiction and conducts an independent review of the record. *Att'y Grievance Comm'n v. Jarosinski*, 411 Md. 432, 448, 983 A.2d 477, 487 (2009). Where no exceptions are filed to the hearing judge's findings of fact, we "may treat the findings of fact as established for the purpose of determining appropriate sanctions[.]" Md. Rule 16–759(b)(2)(A). "In other words, we deem the hearing judge's findings of fact 'correct if (1) they are not clearly erroneous, or (2), at the Court's option, if neither party filed exceptions to them.'" *Att'y Grievance Comm'n v. Bell*, 432 Md. 542, 558, 69 A.3d 1040, 1049 (2013) (quoting *Att'y Grievance Comm'n v. Kremer*, 432 Md. 325, 334, 68 A.3d 862, 868 (2013)). We review the hearing judge's conclusions of law for legal correctness. Md. Rule 16–759(b)(1).

Neither party has taken exception to the hearing judge's findings of fact, therefore we deem Judge Souder's findings as established. *Bell*, 432 Md. at 558, 69 A.3d at 1049. Petitioner excepts to the hearing judge's conclusions of law in three respects. Petitioner first excepts to the hearing judge's conclusion that Petitioner failed to present clear and convincing evidence of a violation of Rule 1.15(a) in the Pazura matter. Second, Petitioner excepts to the hearing judge's omission of any specific finding of a Rule 8.4(d) violation in all four matters. Lastly, Petitioner excepts to the hearing judge's

omission of any specific finding of a Rule 8.4(b) and (c) violation in the Garner and Antonelli matters. Petitioner recommends that Respondent be disbarred, irrespective of our consideration of these exceptions. Respondent, in addition to failing to appear before this Court, has filed no exceptions or a sanction recommendation in these matters.

Based on our *de novo* review of the record, we sustain Petitioner's exceptions as to Rules 8.4(b)-(d). We overrule Petitioner's exception as to Rule 1.15(a) in the Pazura matter.

### A. Pazura Complaint

■ MLRPC 1.1 requires a lawyer to provide competent representation to his or her clients. As defined in the Rule, "[c]ompetent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation." MLRPC 1.1. We agree with the hearing judge that, on the facts of this case, "Respondent's failure to pursue Ms. Pazura's case demonstrated a lack of both competence and diligence" in violation of Rule 1.1. *See Att'y Grievance Comm'n v. Guida,* 391 Md. 33, 54, 891 A.2d 1085, 1097 (2006) ("Evidence of a failure to apply the requisite thoroughness and/or preparation in representing a client is sufficient alone to support a violation of Rule 1.1."). Respondent, to the detriment of her client, failed to timely respond to opposing counsel's discovery requests, timely submit discovery requests on the behalf of Pazura, advise Pazura as to the consequences of withdrawing $83,700 from a home equity line of credit, and prepare for Pazura's trial by failing to obtain expert witnesses to testify.

■ MLRPC 1.3 requires a lawyer to "act with reasonable diligence and promptness in representing a client." We agree with the hearing judge that Respondent's lack of preparedness for trial and lack of thoroughness during the course of the representation as described above violates Rule 1.3.

■ MLRPC 1.4 requires an attorney to "(1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent . . . is required . . .; (2)

keep the client reasonably informed about the status of the matter; [and] (3) promptly comply with reasonable requests for information" as well as "explain a matter to the extent reasonably necessary to permit the client to make informed decisions." We agree with the hearing judge's conclusions that Respondent violated Rule 1.4(a) and (b) by failing to return Pazura's telephone calls, failing to keep Pazura informed on the status of the divorce proceeding, and failing to send Pazura copies of court documents and correspondence in an effort to keep the client informed about the status of the case. *See Att'y Grievance Comm'n v. Shapiro*, 441 Md. 367, 385, 108 A.3d 394, 405 (2015) ("Attorneys violate MLRPC 1.4 when they fail to communicate with their clients and keep them informed of the status of their legal matters.").

■ Under MLRPC 8.1(b) a lawyer must timely respond to lawful requests for information, including letters from Bar Counsel. *See Att'y Grievance Comm'n v. Fezell*, 361 Md. 234, 249, 760 A.2d 1108, 1116 (2000) ("This Court has a long history of holding that an attorney violates Rule 8.1(b) by failing to respond to letters from disciplinary authorities requesting information."). Respondent violated Rule 8.1(b) by knowingly failing to respond to Bar Counsel's letters during the course of its investigation regarding the Pazura complaint.

Pursuant to MLRPC 8.4(a) "[i]t is professional misconduct for a lawyer to ... violate or attempt to violate the [MLRPC.]" As a result of Respondent's violations of Rules 1.1, 1.3, 1.4, and 8.1(b), we agree that Respondent violated 8.4(a). *Att'y Grievance Comm'n v. Nelson*, 425 Md. 344, 363, 40 A.3d 1039, 1050 (2012) ("Rule 8.4(a) is violated when other Rules of Professional Conduct are breached.").

As noted above, Petitioner excepts to the hearing judge's omission of any specific finding of a Rule 8.4(d) violation. Under Rule 8.4(d) it is professional misconduct to "engage in conduct that is prejudicial to the administration of justice[.]" Based on our independent review of the record, we agree with Petitioner that Respondent violated MLRPC 8.4(d) by failing to communicate with Pazura regarding the status of the case

and act competently during her representation of Pazura. *See Shapiro,* 441 Md. at 394, 108 A.3d at 410 ("Attorneys violate MLRPC 8.4(d) when they fail to keep their clients advised of the status of the representation and represent diligently their clients' interests.").

■ Petitioner has also taken exception to the hearing judge's conclusion that the evidence did not clearly and convincingly support a Rule 1.15(a) violation. Under Rule 1.15(a):

> A lawyer shall hold property of clients ... that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained pursuant to Title 16, Chapter 600 of the Maryland Rules, and records shall be created and maintained in accordance with the Rules in that Chapter.

Based on the record, the hearing judge determined that there was no violation of Rule 1.15(a) because "Petitioner presented no evidence that Respondent ever commingled any funds from Ms. Pazura's check with Respondent's own funds.... Rather, Petitioner's sole allegation with respect to a violation of this Rule is that Petitioner did not promptly deposit the check she received from Ms. Pazura." Although the record reveals that Respondent did, indeed, wait for a period of several months before depositing the personal check from Pazura, we are left to speculate as to what Respondent did with the check during this time period. Petitioner does not present any evidence that Respondent deposited the check into Respondent's own account or otherwise impermissibly commingled the funds. Despite Respondent's possession of the physical check, it appears that the funds remained in Pazura's control until Respondent actually made the deposit. Accordingly, we overrule Petitioner's exception to Rule 1.15(a) in the absence of any evidence that Respondent failed to maintain Pazura's funds, which appear to have remained in the client's control during the period in question, separate from Respondent's

own funds.[14]

## B. Lafalaise Complaint

■ We agree with the hearing judge's conclusions that Respondent violated MLRPC 1.1 and 1.3. The hearing judge found that "Respondent failed to prepare QDROs . . ., failed to assist her client in obtaining real property due to him under [a] consent agreement, and generally provided no legal services of value." As explained above, this lack of thoroughness, preparedness, and diligence in representing Lafalaise violates both Rules 1.1 and 1.3.

■ Similar to the Pazura Complaint, Respondent violated MLRPC 1.4 by failing to adequately communicate with her client regarding the status of the case. *Shapiro*, 441 Md. at 385, 108 A.3d at 405 ("Attorneys violate MLRPC 1.4 when they fail to communicate with their clients and keep them informed of the status of their legal matters."). Indeed, the hearing judge explained that "Respondent often failed to respond to [ ] Lafalaise's telephone messages and to other communications from her client seeking information on the status of [the] case. Respondent also ignored [ ] Lafalaise's requests to make an appointment so that he could meet with Respondent personally."

■ Under MLRPC 1.5(a), "[a] lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses." As previously explained by this Court, "[w]hen an attorney charges a fee but does no work, the fee is *per se* unreasonable. It is irrelevant that the fee is 'initially reasonable' if the attorney fails to perform any of the services for which the attorney was paid." *Att'y Grievance Comm'n v. Gage–Cohen*, 440 Md. 191, 198–99, 101 A.3d 1043, 1047 (2014) (emphasis in original) (citations omitted). We agree that Respondent violated Rule 1.5(a) in light

---

14. We note that Respondent's conduct in failing to deposit the check for a period of several months, although not violative of Rule 1.15(a) in this instance, exhibits a lack of diligence and care, which worked to the detriment of her client.

of the hearing judge's findings that Respondent charged and collected a fee from Lafalaise of approximately $15,000, which Respondent has not returned, but failed to provide any legal services of value.

MLRPC 1.16(d) requires, among other things, a lawyer to "surrender[ ] papers and property to which the client is entitled and refund[ ] any advance payment of fee or expense that has not been earned or incurred" upon termination of the representation. We agree with the hearing judge that by failing to return both the unearned portion of the fee Respondent received and the original documents owed to Lafalaise, despite Lafalaise's numerous requests, Respondent violated Rule 1.16(d).

As explained above, MLRPC 8.1(b) is violated where an attorney knowingly fails to respond to Bar Counsel's inquiries. *Fezell*, 361 Md. at 249, 760 A.2d at 1116 ("This Court has a long history of holding that an attorney violates Rule 8.1(b) by failing to respond to letters from disciplinary authorities requesting information."). Respondent violated Rule 8.1(b) by failing to respond to Bar Counsel's letters during the course of the investigation in regards to the Lafalaise complaint.

We agree that as a result of Respondent's violations of Rules 1.1, 1.3, 1.4, 1.5, and 1.16, Respondent violated Rule 8.4(a). *See Nelson*, 425 Md. at 363, 40 A.3d at 1050 ("Rule 8.4(a) is violated when other Rules of Professional Conduct are breached."). Moreover, based on our independent review of the record, we agree with Petitioner that Respondent violated MLRPC 8.4(d) by, among other things, failing to act diligently in her representation of Lafalaise, communicate adequately with Lafalaise regarding the status of the case, and failing to return the unearned portion of the fee paid by Lafalaise. *See Shapiro*, 441 Md. at 394, 108 A.3d at 410 ("Attorneys violate MLRPC 8.4(d) when they fail to keep their clients advised of the status of the representation and represent diligently their clients' interests.").

### C. Garner and Antonelli Complaints

 As explained in greater detail above, Rules 1.1 and 1.3 are breached where an attorney fails to exercise competence and diligence during the course of the representation. With respect to the Garner complaint, Petitioner violated these Rules by failing to submit an updated Financial Statement to the court during Garner's divorce proceedings, prepare for a *pendente lite* hearing, provide any response to opposing counsel's discovery requests and discovery related motions, and by abandoning her client during the course of the representation. In regards to the Antonelli complaint, Respondent similarly abandoned her client during the course of the representation. This conduct clearly demonstrates a lack of thoroughness, preparedness, competence, and diligence in violation of Rules 1.1 and 1.3 in both client matters. *See Att'y Grievance Comm'n v. Kwarteng*, 411 Md. 652, 660–61, 984 A.2d 865, 870 (2009) (noting that respondent's abandonment of his client violated, among other things Rules 1.1 and 1.3).

 Under MLRPC 1.2:

[A] lawyer shall abide by a client's decisions concerning the objectives of the representation and, when appropriate, shall consult with the client as to the means by which they are to be pursued. A lawyer may take such action on behalf of the client as is impliedly authorized to carry out the representation.

We agree with the hearing judge that by failing to act competently and diligently on the clients' objectives during the course of the representations, *see supra*, as well as failing to keep her clients adequately informed as to the status of the divorce proceedings, *see infra*, Respondent violated Rule 1.2 in both the Garner and Antonelli matters. *See Shapiro*, 441 Md. at 380, 108 A.3d at 402 ("In order for a lawyer to abide by a client's decisions concerning the objectives of the representation, the client must be able to make informed decisions as to the objectives of the representation. In order for a client to make informed decisions as to the objectives of the represen-

tation, an attorney must give the client honest updates regarding the status of his or her case.").

We agree with the hearing judge that Respondent violated Rule 1.4 in both the Garner and Antonelli matters by failing to communicate with these clients regarding the status of their divorce cases. Indeed, the hearing judge found that Respondent failed to respond to Garner's questions following the *pendente lite* hearing concerning Respondent's failure to provide an updated Financial Statement to the court. Respondent also failed to respond to Garner's questions about the results of the hearing and whether Garner had any basis for an appeal or any other remedy of the result. Moreover, during the course of the representation, Respondent failed to respond to Garner's emails, telephone calls, and voice mails. Lastly, Respondent did not inform Garner about opposing counsel's discovery requests. Similarly, the hearing judge found that Respondent failed to "adequately communicate with [ ] Antonelli throughout the representation[.]"

We agree with the hearing judge's conclusion that Respondent violated Rule 1.5 in both the Garner and Antonelli matters in light of the hearing judge's findings that Respondent failed to return fees obtained from each client despite the limited legal services provided and Respondent's eventual abandonment of both Garner and Antonelli. *See Att'y Grievance Comm'n v. Garrett*, 427 Md. 209, 224–25, 46 A.3d 1169, 1178 (2012) (explaining that the fee an attorney collected "became unreasonable when [r]espondent failed to take any meaningful steps in pursuit of his clients' objectives"); *Att'y Grievance Comm'n v. Brady*, 422 Md. 441, 459, 30 A.3d 902, 912 (2011) (concluding that attorney's neglect and abandonment of his representation provided clear and convincing evidence that the fee collected was unreasonable in violation of Rule 1.5). With respect to Garner, the hearing judge found that Respondent "failed to return any of the $6000 fee which [ ] Garner had paid her" despite the "limited services" she provided and her abandonment of Garner. Similarly, the hearing judge found that Respondent failed to return any of

the $6980 paid by Antonelli, following her abandonment, even though Respondent "did not perform any legal services of value for [Antonelli.]"

 We also agree that Respondent violated Rules 1.15(c). Under Rule 1.15(c) "[u]nless the client gives informed consent, confirmed in writing, to a different arrangement, a lawyer shall deposit legal fees ... into a client trust account[.]" Although neither Garner nor Antonelli gave Respondent their "informed consent, confirmed in writing" to an arrangement other than one requiring Respondent to deposit the fees each client paid into a trust account, Respondent failed to deposit any portion of the fees obtained from Garner and Antonelli into a trust account.

 We agree that Respondent's failure to deposit the checks and unearned fees obtained from Garner and Antonelli into a trust account and make or maintain any trust account records constitute violations of Maryland Rules 16–604, 16–606.1, and 16–609, as well as § 10–306 of the Business Occupations and Professions Article. As we explained previously, "Rule 16–604 explicitly requires attorneys to keep all client funds in a trust account." *Nelson*, 425 Md. at 360, 40 A.3d at 1048. Accordingly, Respondent violated this rule when she failed to place the retainer checks obtained from Garner and Antonelli into a trust account. *Id.*

Maryland Rule 16–606.1 requires, among other things, that records of the receipt and disbursement of client funds be created and maintained by the attorney. *See Att'y Grievance Comm'n v. Ross*, 428 Md. 50, 81, 50 A.3d 1166, 1184 (2012). As noted by the hearing judge, "Respondent failed to create and maintain records concerning disbursements made from her trust account and did not properly identify the payee of any disbursements, the person for whom any disbursements were made, or the purpose of any disbursements" in both the Garner and Antonelli matters. Accordingly, we agree with the hearing judge that Maryland Rule 16–606.1 was violated in the Garner and Antonelli matters.

Under Maryland Rule 16–609(a) "[a]n attorney or law firm may not borrow or pledge any funds required by the [Maryland Rules] to be deposited in an attorney trust account, ... or use any funds for any unauthorized purposes." Similarly, BOP § 10–306 provides that "[a] lawyer may not use trust money for any purpose other than the purpose for which the trust money is entrusted to the lawyer." This Court previously explained that "[b]ecause 'the statute and the Rule have the same requirement,' a violation of Rule 16–609 is a violation of BOP § 10–306." *Gage–Cohen*, 440 Md. at 201, 101 A.3d at 1049 (citations omitted). We also pointed out that the "[f]ailure to deposit unearned fees into an attorney trust account is a violation of Rule 16–609, and therefore of BOP § 10–306 as well." *Gage–Cohen*, 440 Md. at 201–02, 101 A.3d at 1049. In the instant case, the hearing judge found that Respondent failed to deposit unearned fees obtained from Garner and Antonelli into a separate attorney trust account. Moreover, as we explained above, Respondent did not obtain Garner's or Antonelli's informed, written consent to an alternate arrangement. The hearing judge's findings in this case extend beyond a mere finding of negligence and evince Respondent's willful derogation of her accounting responsibilities. Accordingly, the rule and the statute were violated in both matters. *Id.*

■ We agree with the hearing judge that by failing to return the unearned portion of the fee Respondent received and owed to Garner and Antonelli following her abandonment of representation in both matters, Respondent violated Rule 1.16(d).

Furthermore, we agree that by failing to respond to Bar Counsel's repeated inquiries in relation to the Garner and Antonelli complaints, Respondent violated Rule 8.1(b). Indeed, Respondent failed to respond to any of the four letters sent by Bar Counsel regarding Garner's complaint or either of the two letters sent concerning Antonelli's complaint.

Moreover, as we have stated above, as a result of Respondent's violations of multiple rules of professional conduct in

both the Garner and Antonelli matters, Respondent violated 8.4(a).

■■■■ Petitioner excepts to the hearing judge's omission of any specific finding of an 8.4(b), (c), or (d) violation in the Garner and Antonelli matters. Based on our review of the record, we agree with Petitioner that Respondent violated MLRPC 8.4(b)-(d). Under MLRPC 8.4(b) it is professional misconduct to "commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects[.]" "It is well established that a conviction is not required to find a violation of [Rule] 8.4(b). A court must find only clear and convincing evidence of conduct that would violate a criminal statute." *Att'y Grievance Comm'n v. Agbaje*, 438 Md. 695, 729, 93 A.3d 262, 282 (2014) (citations omitted). Respondent's violation of BOP § 10-306 supports a violation of Rule 8.4(b). *Att'y Grievance Comm'n v. Jarosinski*, 411 Md. 432, 453, 983 A.2d 477, 490 (2009); *Att'y Grievance Comm'n v. Goodman*, 426 Md. 115, 131, 43 A.3d 988, 997 (2012). *See also* BOP § 10-606 (providing that a violation of BOP § 10-306 is a misdemeanor).

■■■■ Rule 8.4(c) defines professional misconduct as "engag[ing] in conduct involving dishonesty, fraud, deceit or misrepresentation." "The retention of unearned fees paid by a client, alone, may constitute a violation of Rule 8.4(c)." *Att'y Grievance Comm'n v. Blair*, 440 Md. 387, 404, 102 A.3d 786, 795 (2014) (quoting *Att'y Grievance Comm'n v. McLaughlin*, 372 Md. 467, 502-03, 813 A.2d 1145, 1166 (2002)). Here Respondent accepted a $6000 fee from Garner and $6980 from Antonelli, failed to deposit the money into an attorney trust account, and failed to perform any legal services of value for Antonelli and provided only "limited services" for Garner. Following her abandonment of Garner and Antonelli, Respondent failed to return any of the unearned fees obtained from either client. Therefore, we agree with Petitioner that Respondent violated Rule 8.4(c).

■■■■ Respondent violated Rule 8.4(d) by failing to act diligently in her representation of either individual, communi-

cate adequately regarding the status of the case, return the unearned portion of the fees paid, and by abandoning both clients during the course of the representation. *See Shapiro,* 441 Md. at 394, 108 A.3d at 410. Respondent's conduct in each of the client matters before this Court clearly "erodes public confidence in the legal profession." *Gage–Cohen,* 440 Md. at 202–03, 101 A.3d at 1049 (quoting *Nelson,* 425 Md. at 362, 40 A.3d at 1039).

### III. SANCTION

 "The only [remaining] question to be resolved by us is the appropriate sanction." *Att'y Grievance Comm'n v. Palmer,* 417 Md. 185, 205–06, 9 A.3d 37, 49 (2010). In attorney discipline cases, the sanction imposed depends on the facts and circumstances of each case, and in arriving at an appropriate sanction we "consider the nature of the ethical duties violated in light of any aggravating or mitigating circumstances." *Att'y Grievance Comm'n v. Paul,* 423 Md. 268, 284, 31 A.3d 512, 522 (2011). Accordingly, the sanctions imposed should be "commensurate with the nature and gravity of the violations and the intent with which they were committed." *Att'y Grievance Comm'n v. Stein,* 373 Md. 531, 537, 819 A.2d 372, 375 (2003). "It is well settled that our obligation in disciplinary matters is to protect the public and maintain the public's confidence in the legal system rather than to punish the attorney for misconduct." *Att'y Grievance Comm'n v. Nichols,* 405 Md. 207, 217, 950 A.2d 778, 785 (2008) (quoting *Att'y Grievance Comm'n v. Ward,* 394 Md. 1, 32, 904 A.2d 477, 496 (2006)).

Petitioner recommends disbarment as the appropriate sanction for Respondent's misconduct. We agree. *See Att'y Grievance Comm'n v. Davy,* 435 Md. 674, 80 A.3d 322 (2013) (concluding that disbarment was the appropriate sanction for attorney who, among other things, engaged in a pattern of misconduct with multiple clients, failed to deposit unearned fees into an attorney trust account, charged unreasonable fees, and had prior disciplinary history).

We take into consideration the long list of violations, Respondent's multiple violations of Rules 8.1(b), 8.4(b)-(c), and BOP § 10–306, as well as Respondent's lengthy history with the attorney disciplinary process. Notably, Respondent's willful mishandling of fees obtained from her clients calls into question her integrity. *See Att'y Grievance Comm'n v. Butler*, 395 Md. 1, 15, 909 A.2d 226, 234 (2006) ("We have held that the '[m]isappropriation of funds by an attorney is an act infected with deceit and dishonesty and ordinarily will result in disbarment in the absence of compelling extenuating circumstances justifying a lesser sanction.' ") (quoting *Att'y Grievance Comm'n v. Vanderlinde*, 364 Md. 376, 406, 773 A.2d 463, 480 (2001)). Respondent has not offered any mitigating factors to excuse her egregious conduct, which is unsurprising given that Respondent failed to participate in the disciplinary proceedings.

Moreover, Respondent's failure to cooperate with Bar Counsel during the course of this investigation and to appear or otherwise participate in this matter demonstrate Respondent's apathy towards the attorney disciplinary process.[15] Lastly, as we have noted above, this represents the fourth time Respondent has appeared before this Court in a disciplinary proceeding. Respondent's disciplinary history includes a reprimand, *Gray I*, 421 Md. 92, 25 A.3d 219 (2011), a sixty day suspension from the practice of law, *Gray II*, 433 Md. 516, 72 A.3d 174 (2013), and her indefinite suspension from the practice of law, which she is currently serving. *Gray III*, 436 Md. 513, 83 A.3d 786 (2014). *See Att'y Grievance Comm'n v. Weiers*, 440 Md. 292, 309, 102 A.3d 332, 343 (2014) (noting that an attorney's prior grievance history constitutes part of the facts and circumstances considered in reaching an appropriate sanction). In light of the above, on Respondent's fourth appearance before this Court, we conclude that disbarment is the only appropriate sanction in this case.

---

**15.** This is not the first time Respondent failed to appear before this Court in an attorney grievance matter. Indeed, Respondent failed to participate in *Gray III*, 436 Md. 513, 83 A.3d 786 (2014).

IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING THE COSTS OF ALL TRANSCRIPTS, PURSUANT TO RULE 16–761, FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST MELISSA D. GRAY.