*Attorney Grievance Commission of Maryland v. Bonnie Elizabeth Plank*, Misc. Docket AG No. 59, September Term, 2015 & Misc. Docket AG No. 12, September Term 2016. Opinion by Hotten, J.

**ATTORNEY DISCIPLINE — SANCTIONS — DISBARMENT:** Respondent, Bonnie Elizabeth Plank, violated Maryland Lawyers' Rules of Professional Conduct 1.1; 1.3; 1.4; 1.5(a); 1.6; 1.15(a) and (c); 1.16(d); 3.3(a); 5.5(a); 7.1(a); 8.1(b); and 8.4(b), (c), and (d). These violations stemmed from five separate complaints filed with the Attorney Grievance Commission based on misconduct involving dishonesty, misrepresentations to the courts, criminal convictions, the unauthorized practice law, and an obstruction of Bar Counsel's investigation. Disbarment is the appropriate sanction.

Circuit Court for Baltimore County
Case Nos. C-15-14239 and C-16-6873
Argued: April 4, 2017

IN THE COURT OF APPEALS

OF MARYLAND

Misc. Docket AG No. 59
September Term, 2015

&

Misc. Docket AG No. 12
September Term, 2016

_____

ATTORNEY GRIEVANCE COMMISSION
OF MARYLAND

v.

BONNIE ELIZABETH PLANK
_____

Barbera, C.J.,
Greene,
Adkins,
McDonald,
Watts,
Hotten,
Getty,

JJ.

_____

Opinion by Hotten, J.

_____

Filed: June 22, 2017

Respondent, Bonnie Elizabeth Plank was admitted to the Bar of the Court of Appeals on June 13, 2006. On December 17, 2015, Petitioner, the Attorney Grievance Commission, acting through Bar Counsel, filed with this Court a Petition for Disciplinary or Remedial Action against Respondent. On December 22, 2015, this Court ordered that the case be transmitted to the Circuit Court for Baltimore County and designated the Honorable Judith C. Ensor to conduct an evidentiary hearing and render findings of fact and conclusions of law. Petitioner filed an Amended Petition for Disciplinary or Remedial Action in this Court on January 29, 2016 ("Amended Petition I"). The charges brought in Amended Petition I are based on conduct outlined in four separate complaints filed with the Commission. On June 7, 2016, Petitioner filed a separate Petition for Disciplinary or Remedial Action and a Motion to Consolidate Petitions for Disciplinary or Remedial Action ("Petition II"), based on an additional complaint. By order dated June 13, 2016, this Court consolidated the two cases for purposes of a hearing.

Respondent failed to appear at the evidentiary hearing on December 13, 2016. Thereafter, the hearing judge issued written findings of fact and proposed conclusions of law, determining that the Respondent violated Maryland Lawyers' Rules of Professional Conduct ("MLRPC")[1] 1.1; 1.3; 1.4; 1.5(a); 1.6; 1.15(a) and (c); 1.16(d); 3.3(a); 5.5(a); 7.1(a); 8.1(b); and 8.4(b), (c), and (d). This Court scheduled argument for April 4, 2017.

---

[1] Effective July 1, 2016, the MLRPC were renamed the Maryland Attorneys' Rules of Professional Conduct ("MARPC") and moved to Title 19, Chapter 300 of the Maryland Rules. Amended Petition I and Petition II were filed before July 1, 2016. For clarity and continuity, the hearing court's proposed findings of fact and conclusions of law referred to the MLRPC as titled at the time the petitions were filed. This Court does the same here.

Respondent did not appear. Bar Counsel recommended disbarment as the appropriate sanction. We issued a per curiam order on April 4, 2017 disbarring Respondent immediately from the practice of law in the State of Maryland. We now explain our reasons for that order.

## I. Hearing Judge's Findings and Conclusions

Because Respondent failed to file an Answer to the Commission's Petition for Disciplinary or Remedial Action, the hearing judge treated the averments in the Petitioner as admitted pursuant to Md. Rule 2-323(e). Based upon clear and convincing evidence, the hearing judge presented the following findings of fact:[2]

> Respondent was admitted to the Bar of the Court of Appeals of Maryland on June 13, 2006. At all times relevant to this matter, Ms. Plank was not admitted to practice law in any other State or in the District of Columbia. During the time period of the first four complaints set forth in Amended Petition I, Respondent maintained an office for the practice of law in Howard County and/or Montgomery County, Maryland. Her right to practice law has been suspended temporarily since March 24, 2016, as a result of Ms. Plank's "non-payment of CPF Assessment Fee."

### Amended Petition I

#### 1. Bar Counsel Complaint

> On January 29, 2015, the Morgan County Sheriff's Department in West Virginia advised Petitioner that Ms. Plank had been charged with Driving Under the Influence of Controlled Substances and Possession of Controlled Substance—Marijuana following her arrest on January 28, 2015.

> On February 20, 2015, the Commission sent a letter, with copies of the charging documents from West Virginia, to Respondent, notifying her that an investigation would be conducted regarding the alleged conduct. Petitioner requested a written response, within 15 days, as to the allegation

---

[2] The hearing court's citations to Petitioner's Exhibits are omitted.

that Ms. Plank had violated MLRPC 8.4(b) and (d). Respondent failed to provide Petitioner with a response.

On April 9, 2015, Commission Investigator William Ramsey ("Investigator Ramsey") met with Respondent and inquired about the criminal charges. At that time, Respondent invoked her Fifth Amendment privilege but denied having a substance abuse problem. At the meeting, Respondent provided Investigator Ramsey with Maryland Judiciary Case Search print-outs relevant to her name. The print-outs showed multiple citations issued to Ms. Plank for driving while her license was suspended in Maryland.[] In addition, on April 6, 2015, in the Circuit Court for Howard County, Respondent pled guilty to failing to display a driver's license to a uniformed officer.

On December 16, 2015, Respondent entered guilty pleas in Morgan County, West Virginia to charges of Driving Under the Influence of Controlled Substances (West Virginia Code § 17C-5- 2) and Possession of Controlled Substance—Marijuana (West Virginia Code § 60A-4-401). Her pleas were accepted; Ms. Plank was convicted of both charges. Respondent was ordered to pay a $200 fine and $260.25 in costs and fees for the Driving Under the Influence of Controlled Substances conviction. For the Possession of Controlled Substance—Marijuana conviction, Respondent was required to pay a $100 fine and $165.25 in costs and fees.

### 2. Jones Complaint

On March 27, 2014, Mr. Howard Vernon Jones ("Mr. Jones") hired Respondent to represent him in a Chapter 7 bankruptcy proceeding because his home was in foreclosure. Throughout the representation, Respondent met with Mr. Jones at his home and never provided him with an office address. Mr. Jones and Respondent agreed that they would communicate regarding his representation by cell phone, text message, and email.

At their initial meeting, Ms. Plank requested a fee of $1,200. Although she had not yet provided any legal services, Respondent accepted a payment of $600 from Mr. Jones. Ms. Plank promised to provide a receipt for this payment, but failed to do so. Mr. Jones tendered an additional payment of $600.00 to Respondent roughly one week after the initial meeting.

On March 27, 2014, notwithstanding the fact that he had instructed her to file for bankruptcy under Chapter 7, Ms. Plank filed for Chapter 13 bankruptcy on behalf of Mr. Jones. At a meeting with Respondent, Mr. Jones

learned of the incorrect filing and again instructed Ms. Plank to file for bankruptcy pursuant to Chapter 7. Respondent indicated that she would. On or about June 26, 2014, Respondent filed a petition for Chapter 7 bankruptcy on behalf of Mr. Jones, but failed to address in any manner the incorrect Chapter 13 bankruptcy filing.

Mr. Jones appeared for a scheduled meeting/hearing in the Bankruptcy Court on or about August 15, 2014. Just prior to the meeting/hearing, Mr. Jones received a telephone call from Respondent. Ms. Plank indicated that she was in the hospital in Baltimore and instructed Mr. Jones to return to his home. Although Ms. Plank told Mr. Jones that she would contact him about rescheduling the meeting/hearing, she failed to do so. After numerous failed attempts to contact Respondent, Mr. Jones ultimately engaged new counsel. Mr. Jones learned, through his subsequent attorney, that Respondent had failed to withdraw the incorrectly filed Chapter 13 bankruptcy petition.

On May 28, 2014, the Chapter 13 filing was dismissed. The Bankruptcy Court directed Respondent to file, by June 11, 2014, a response justifying her fee. Ms. Plank failed to do so. On June 27, 2014, the Bankruptcy Court issued an order directing Respondent to refund the fee to Mr. Jones. On August 19, 2014, Respondent filed a Motion for Reconsideration of the Dismissal of the Chapter 13 filing and Reduction of Fees; the Motion was denied. On July 29, 2014, the Chapter 7 bankruptcy case was dismissed and Respondent was again ordered to refund any attorney's fees. Respondent failed to refund the fees.

On September 5, 2014, the Commission sent Respondent a letter, notifying her of the complaint filed by Mr. Jones and requesting a response within 15 days. On September 30, 2014, because there was no response, Petitioner sent a second letter, again requesting information from Ms. Plank. The letter was returned as undeliverable. On November 10, 2014, Petitioner sent a third letter to Respondent's last known address. In this correspondence, Petitioner requested that Ms. Plank provide a written response, a copy of the file Respondent maintained for Mr. Jones, and an accounting of the fees.

Ms. Plank failed to respond in writing to any of Petitioner's letters. That said, after Ms. Plank received the letter of November 10, 2014, she contacted Petitioner. Ms. Plank claimed that the Mr. Jones who made the complaint was not her client and stated that the signatures on the complaint did not match those of her former client. Investigator Ramsey, after meeting

with Mr. Jones, confirmed that the complainant had engaged Respondent and was, in fact, the correct Mr. Jones.

On February 27, 2015, Petitioner sent another letter to Respondent, reminding her that a written response was due. On or about March 9, 2015, Ms. Plank sent an email to the Commission. That email, however, lacked any substantive information regarding the complaint.

Petitioner did speak with Respondent by telephone on March 11, 2015. During the telephone call, Petitioner reminded Ms. Plank that she was required to provide a written response to the complaint. Respondent stated that she had been out of town for about three weeks and assured Investigator Ramsey that she would respond to the complaint within one week; still, Ms. Plank did not provide a written response.

At the request of Investigator Ramsey, Respondent met with him again on April 8, 2015. At that meeting, Ms. Plank confirmed that she had represented Mr. Jones and had filed on his behalf for bankruptcy under Chapter 7 and Chapter 13. Respondent indicated that she received $1,200 in attorney's fees and that, of that amount, she used $306 to pay filing fees. Respondent further indicated that, because she did not have the necessary software for the court filings, she had to engage the assistance of another attorney and his paralegal. Ms. Plank stated that she paid the paralegal $894, the balance of the fee received from Mr. Jones. Neither the attorney nor the paralegal ever received the $894 payment.

### 3. Lal Complaint

Respondent was engaged by Aung Kyaw Min Lal ("Mr. Lal") on or about December 16, 2014. She was retained to represent Mr. Lal in the defense of a debt collection case filed on or about September 19, 2014. The amount in controversy was $5,600. Prior to Respondent's involvement, in November 2014, the plaintiff moved the case from Baltimore County to Washington County, Maryland.

Ms. Plank and Mr. Lal agreed that her fee for services rendered would be $500 if the case was resolved prior to a hearing and $1,500 if a hearing was necessary. Mr. Lal paid Respondent $1,500 at the time of the engagement. Ms. Plank failed to place the funds in an attorney trust account and failed to withdraw properly the funds as earned.

During her representation of Mr. Lal, Ms. Plank propounded Interrogatories to the plaintiff. The discovery requests, however, were not

- 5 -

filed timely pursuant to Maryland Rule 3-421(b). Moreover, Respondent did not obtain leave of Court to propound the discovery after the deadline.

In March, 2015, Mr. Lal authorized Respondent to offer $2,500 in settlement of the matter. Respondent, however, informed Mr. Lal that she required him to produce the $2,500 in advance of her transmitting the offer. Respondent further indicated that, if she was able to negotiate and decrease the settlement amount, she would keep the balance of the $2,500 for her continuing involvement in the case. Ms. Plank attempted to justify her actions by informing Mr. Lal that she had earned in excess of what he had paid her.

Using false information and threats, Respondent pressured Mr. Lal to accept her conditions vis-à-vis the settlement offer. For instance, Ms. Plank incorrectly advised Mr. Lal that he could be found criminally liable for refusing to comply with a trial subpoena for the production of records. Opposing counsel in the debt collection case confirmed that Mr. Lal was not under any obligation to produce records at the time of Respondent's advice on March 24, 2015. In addition, Ms. Plank informed Mr. Lal that she was risking her license by continuing to act on his behalf. In response to Respondent's demands, Mr. Lal requested a release of the debt before he produced the funds.

After Mr. Lal refused to accept Respondent's new conditions, Ms. Plank changed the terms of the agreement without his consent. Although Respondent previously had indicated that Mr. Lal owed her $800, she subsequently informed Mr. Lal that he now owed her $2,500. Ms. Plank continued to provide false information to Mr. Lal and accused him of committing fraud on the Court. She threatened to file a $50,000 breach of contract claim against Mr. Lal and report him to the board that oversees his professional licensing. Respondent further advised Mr. Lal that she was entitled to punitive and actual damages and that he would be responsible for paying them. Mr. Lal did not send Respondent any additional funds and settled the case without her assistance.

On May 8, 2015, the Commission sent a letter to Respondent, informing her of Mr. Lal's complaint and requesting a written response and a copy of Mr. Lal's file. Investigator Ramsey met with Respondent on or about June 4, 2015. At that time, Investigator Ramsey hand-delivered to Ms. Plank a copy of Mr. Lal's complaint and Petitioner's letter of May 8, 2015. Investigator Ramsey reiterated to Respondent that she was required to respond in writing to the Commission's letter. Ms. Plank never provided a written response. In addition, during the meeting with Investigator Ramsey,

Respondent falsely represented that she had Mr. Lal's debt collection case transferred from Baltimore County to Washington County.[] Respondent also stated that the check from Mr. Lal was deposited into an attorney trust account. In fact, a copy of the check confirmed that the check was endorsed over to a third party and never deposited as claimed by Ms. Plank.

### 4. Wheat Complaint

Scott B. Wheat, Esquire ("Mr. Wheat") represented Plaintiff CACH, LLC in the Lal collection case. As already mentioned, in that case, Ms. Plank failed to propound discovery in a timely manner and failed to obtain court approval to allow the late filing. When Mr. Wheat refused to respond to the untimely discovery requests, Ms. Plank threatened to bring disciplinary action against him. During the course of the case, Mr. Wheat received forwarded emails from Respondent that involved communications between Mr. Lal and her -- privileged and confidential information.

In another matter in which both Mr. Wheat and Ms. Plank were involved, *CACH, LLC v. Allen*, Respondent filed a Line Withdrawing Entry of Appearance, which did not conform with the Maryland Rules.

The Commission notified Respondent of Mr. Wheat's complaint by letter dated July 9, 2015. The letter required a written response within 15 days; Respondent failed to comply.

### Petition II

### 1. Porter Complaint

In August 2015, Respondent, while employed by a law firm ("the firm") in Texas, met with one of the firm's clients, Linda Ann Porter ("Ms. Porter").[] The firm represented Ms. Porter as a plaintiff in a suit filed in the United States District Court for the Southern District of Texas.

At some time in August 2015, Respondent encouraged Ms. Porter to discharge the firm and engage Respondent to represent her. On or about August 20, 2015, Ms. Porter, in fact, retained Respondent who, by this time, was no longer affiliated with the firm. While in Texas, Respondent published documents on letterhead from the "Law Office of Elizabeth Plank" and listed a Houston, Texas address. There was no indication on these documents, however, that Ms. Plank was not authorized to practice law in Texas or that her participation would be limited to serving in a non-lawyer capacity. Respondent held herself out as being authorized to practice law in Texas.

Upon engagement, Ms. Porter paid Respondent a fee of $1,500 and agreed to a contingency fee of 20% of any and all recoveries resulting from the suit. The agreement was outlined in a document titled *Engagement Letter and Fee Agreement*. Ms. Porter paid Respondent the $1,500. Ms. Plank, however, failed to place the payment in an attorney trust account, and failed to obtain Ms. Porter's consent to deposit the money elsewhere. Ms. Plank did not withdraw properly the fees as earned.

At some point during this representation, Ms. Plank falsely represented to Ms. Porter that her $1,500 check was refused by the bank. Ms. Porter issued another check for $1,500. After learning of the double payment, Ms. Porter demanded a refund from Respondent, but she refused.

Respondent, in fact, sought additional payment for her services. The requested payments were not contemplated by the *Engagement Letter and Fee Arrangement*. Ms. Porter declined to make additional payments to Ms. Plank. Thereafter, Respondent abandoned the representation of Ms. Porter without notice and without sufficient time for another attorney to be engaged. Moreover, Respondent refused to refund any of the unearned fees. In addition, Ms. Plank, after being requested to do so, failed to supply Ms. Porter with documents pertaining to her representation.

On or about September 1, 2015, Respondent filed a Motion for Withdrawal of Counsel on Behalf of Plaintiff, Linda Ann Porter without the authorization of Ms. Porter. In the Motion, Respondent falsely represented that Ms. Porter had failed to pay attorney's fees. To the contrary, Ms. Porter had paid all of fees called for in the *Engagement Letter and Fee Arrangement*.

Respondent failed to respond to the Commission's multiple demands for a response to the complaint of Ms. Porter.

Judge Ensor concluded[3] that Respondent violated MLRPC 1.1 (competence);

1.3 (diligence); 1.4 (communication); 1.5(a) (fees); 1.6 (confidentiality of

information); 1.15(a) and (c) (safekeeping property); 1.16(d) (declining or

---

[3] Petitioner, in an attempt to avoid duplicative violations, requested that the hearing court not provide proposed conclusions of law with regard to all of the violations charged in Amended Petition I and Petition II.

terminating representation); 3.3(a) (candor toward the tribunal); 5.5(a) (unauthorized practice of law; multijurisdictional practice of law); 7.1(a) (communications concerning a lawyer's services); 8.1 (bar admission and disciplinary matters); and 8.4(b), (c), and (d) (misconduct):[4]

### 1.1 Competence

A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.

### 1.3 Diligence

A lawyer shall act with reasonable diligence and promptness in representing a client.

[The hearing court] finds, by clear and convincing evidence, that Respondent violated MLRPC 1.1 and 1.3. Respondent failed to provide competent representation and failed to act with reasonable diligence and promptness in representing Mr. Jones. Respondent failed to follow the instructions of her client and incorrectly filed a bankruptcy petition under Chapter 13 of the Bankruptcy Code. Respondent made matters worse when she filed a separate petition under Chapter 7, instead of simply correcting her error. Respondent failed to inform the Bankruptcy Court of her error and Mr. Jones' petition was dismissed. Respondent failed to appear for a hearing and failed to reschedule the matter promptly, despite having told Mr. Jones that she would. Respondent's conduct demonstrated a lack of legal knowledge, skill, thoroughness or preparation reasonably necessary to represent Mr. Jones.

### 1.4 Communication

(a) A lawyer shall:

---

[4] The pertinent sections of the MLRPC are quoted throughout the hearing court's proposed conclusions of law.

(1) Promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in Rule 1.0(f), is required by these Rules;
(2) Keep the client reasonably informed about the status of the matter;
(3) Promptly comply with reasonable requests for information; and
(4) Consult with the client about any relevant limitation on the lawyer's conduct when the lawyer knows that the client expects assistance not permitted by the Maryland Lawyers' Rules of Professional Conduct or other law.

(b) An attorney shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

[The hearing court] finds, by clear and convincing evidence, that Respondent violated MLRPC 1.4. Respondent failed to keep Mr. Jones reasonably informed about the status of his case. She failed to reschedule a missed hearing date. Respondent failed to withdraw the incorrectly filed Chapter 13 bankruptcy petition, a fact of which Mr. Jones was made aware by his subsequent attorney. Mr. Jones was not informed that Respondent was abandoning the representation.

**1.5 Fees**

(a) A lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses….

[The hearing court] finds, by clear and convincing evidence, that Respondent violated MLRPC 1.5 in her representation of Mr. Jones, Mr. Lal, and Ms. Porter. It is well established that a fee arrangement is unreasonable when a lawyer fails to provide any meaningful work in exchange for the fees. *See Attorney Grievance Comm'n v. Chapman*, 430 Md. 238, 275-76, 60 A.3d 25, 48 (2013) (internal citation omitted). With respect to Mr. Jones, Respondent incorrectly filed a petition for bankruptcy under Chapter 13, and compounded the error by filing another petition under Chapter 7. Respondent failed to reschedule a missed hearing or communicate with Mr. Jones about rescheduling the hearing. Respondent sought the assistance of another attorney and paralegal as she did not have the necessary software for the court filings. Respondent's representation of Mr. Jones provided no value to him and was not meaningful.

Initially, Mr. Lal paid Respondent $1,500. Respondent subsequently tried to induce Mr. Lal, by the use of threats and false information, to make additional payments for her representation. Mr. Lal, ultimately, settled the case without the assistance of Respondent. Mr. Lal received no meaningful representation or legal services in return for the $1,500 he paid.

Respondent initially was paid $1,500 by Ms. Porter. Respondent then induced Ms. Porter to make another payment of $1,500. When Ms. Porter learned of the double payment, she requested that Respondent refund $1,500. Respondent did not return the payment and did not earn the fee charged.

## 1.6 Confidentiality of Information

(a) A lawyer shall not reveal information relating to representation of a client unless the client gives informed consent, the disclosure is impliedly authorized in order to carry out the representation, or the disclosure is permitted by paragraph (b).

(b) A lawyer may reveal information relating to the representation of a client to the extent the attorney reasonably believes necessary:

(1) to prevent reasonably certain death or substantial bodily harm;

(2) to prevent the client from committing a crime or fraud that is reasonably certain to result in substantial injury to the financial interests or property of another and in furtherance of which the client has used or is using the lawyer's services;

(3) to prevent, mitigate, or rectify substantial injury to the financial interests or property of another that is reasonably certain to result or has resulted from the client's commission of a crime or fraud in furtherance of which the client has used the lawyer's services;

(4) to secure legal advice about the lawyer's compliance with these Rules, a court order or other law;

(5) to establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and the client, to establish a defense to a criminal charge, civil claim, or disciplinary complaint against the lawyer based upon conduct in which the client was involved or to respond to allegations in any proceeding concerning the lawyer's representation of the client; or

(6) to comply with these Rules, a court order or other law.

[The hearing court] finds, by clear and convincing evidence, that Respondent violated MLRPC 1.6. Respondent shared confidential information—privileged email communications from Mr. Lal—with Mr. Wheat. There was no evidence presented to indicate that any exception under subsection (b) applied and permitted Respondent to disclose the privileged and confidential information to Mr. Wheat.

## 1.15 Safekeeping Property

(a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained pursuant to Title 16, Chapter 600 of the Maryland Rules, and records shall be created and maintained in accordance with the Rules in that Chapter. Other property shall be identified specifically as such and appropriately safeguarded, and records of its receipt and distribution shall be created and maintained. Complete records of the account funds and of other property shall be kept by the lawyer and shall be preserved for a period of at least five years after the date the record was created . . .

(c) Unless the client gives informed consent, confirmed in writing, to a different arrangement, a lawyer shall deposit legal fees and expenses that have been paid in advance into a client trust account and may withdraw those funds for the lawyer's own benefit only as fees are earned or expenses incurred. . . .

[The hearing court] finds, by clear and convincing evidence, that Respondent violated MLRPC 1.15. Mr. Lal paid Respondent $1,500, which she failed to deposit and maintain in an attorney trust account until earned. There was no indication that Mr. Lal gave his informed consent, in writing, for Respondent to maintain the funds in an account other than an attorney trust account pursuant to subsection (c) of MLRPC 1.15.

Respondent received $1,500 from Ms. Porter at the time of engagement. Ms. Plank failed to place these funds in an attorney trust account and failed to maintain the funds in a trust until earned. Ms. Porter did not give her informed consent in writing to allow Respondent to keep these funds in an account other than an attorney trust account.

**1.16 Declining or Terminating Representation**

. . . (d) Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee or expense that has not been earned or incurred. The lawyer may retain papers relating to the client to the extent permitted by other law.

[The hearing court] finds, by clear and convincing evidence, that Respondent violated MLRPC 1.16. Respondent abandoned her representation of Ms. Porter. She failed to give proper notice to Ms. Porter or allow sufficient time for Ms. Porter to engage other representation. When Ms. Porter requested a refund of the unearned fees, Respondent refused.

**Rule 3.3 Candor to the Tribunal**

(a) A lawyer shall not knowingly:

(1) make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer[] . . . .

[The hearing court] finds, by clear and convincing evidence, that Respondent violated MLRPC 3.3. In her Motion for Withdrawal of Counsel on Behalf of Plaintiff, Linda Ann Porter, Respondent falsely represented that Ms. Porter had not paid all of her legal fees. Respondent was not authorized to file this motion on behalf of Ms. Porter, a fact that she misrepresented in her motion. At the time of the filing, Ms. Porter had paid all of the fees due to Respondent. The misrepresentations made by Ms. Plank were used to support the Motion to Withdraw and, therefore, were material.

**5.5 Unauthorized Practice of Law; Multijurisdictional Practice of Law**

(a) A lawyer shall not practice law in a jurisdiction in violation of the regulation of the legal profession in that jurisdiction, or assist another in doing so. . . .

[The hearing court] finds, by clear and convincing evidence, that Respondent violated MLRPC 5.5. At some point in August 2015, Respondent convinced Ms. Porter to discharge the firm in Texas, with which Respondent was previously affiliated, and hire Respondent. At the time of the engagement, Respondent was not affiliated with any law firm. Respondent continued her

representation of Ms. Porter through September 1, 2015. During the representation, Respondent published documents on letterhead that read "Law Office of Elizabeth Plank" and listed a Houston, Texas address. The documents did not describe any limitation on Respondent's ability to practice law in Texas. Respondent held herself out as being authorized to practice law in Texas, yet she was not. Respondent's conduct in Texas is of a criminal nature and, if found guilty, would be a third degree felony.

## 7.1 Communications Concerning a Lawyer's Services

A lawyer shall not make a false or misleading communication about the lawyer or the lawyer's services. A communication is false or misleading if it:

(a) contains a material misrepresentation of fact or law, or omits a fact necessary to make the statement considered as a whole not materially misleading; . . . .

[The hearing court] finds, by clear and convincing evidence, that Respondent violated MLRPC 7.1. Respondent published documents on letterhead from the "Law Office of Elizabeth Plank" with an address in Houston, Texas. Respondent did not include on that letterhead any indication that she was not admitted to practice law in Texas or that she was acting in a non-lawyer capacity. Thus, Ms. Plank falsely held herself out as an attorney authorized to practice law in Texas. *See, i.e. Attorney Grievance Comm'n v. Harris-Smith*, 356 Md. 72, 86, 737 A.2d 567, 574-75 (1999) (to avoid being misleading, an attorney who is not admitted to practice in Maryland but maintains an office for the practice of law in that state must advise prospective clients that she is not admitted to practice in Maryland).

## 8.1 Bar Admission and Disciplinary Matters

An applicant for admission or reinstatement to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not:

(a) knowingly make a false statement of material fact; or

(b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this Rule does not require disclosure of information otherwise protected by Rule 1.6.

[The hearing court] finds, by clear and convincing evidence, that Respondent violated MLRPC 8.1. The Court of Appeals has held that a

failure to respond to lawful requests for information, including letters from Bar Counsel, is a Violation of MLRPC 8.1. *See Attorney Grievance Comm'n v. Gray*, 444 Md. 227, 252, 118 A.3d 995, 1009 (2015). An attorney who receives a letter from Bar Counsel must contact Bar Counsel, acknowledge receipt of the letter and, if necessary, request and obtain an extension of a reasonable time in which to respond. *See Attorney Grievance Comm'n v. Queen*, 407 Md. 556, 565, 967 A.2d 198, 203 (2009).

Petitioner first sent Respondent a letter, with respect to the Jones Complaint, on September 5, 2014. Respondent failed to respond. Respondent's contact with Petitioner in November 2014 and March 2015 established that Respondent had received the correspondence and that she was aware of her obligation to respond in writing. Respondent was not excused from responding when she met with Investigator Ramsey.

Petitioner sent Respondent a letter, with respect to the Lal Complaint, on May 8, 2015. Respondent failed to respond or provide anything requested of her. Respondent then met with Investigator Ramsey on June 4, 2015, and was reminded that she needed to file a written response. Respondent agreed that she would, but did not. During the meeting with Investigator Ramsey on June 4, 2015, Ms. Plank misrepresented that she had deposited Mr. Lal's check into an attorney trust account when, in fact, it had been endorsed over to a third party. Respondent further misrepresented to Investigator Ramsey that she was responsible for Mr. Lal's debt collection case having been transferred to Washington County, yet the case was transferred prior to Ms. Plank's involvement.

**8.4 Misconduct**

It is professional misconduct for a lawyer to: . . .

> (b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;
>
> (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;
>
> (d) engage in conduct that is prejudicial to the administration of justice[] . . . .

[The hearing court] finds, by clear and convincing evidence, that Respondent violated MLRPC 8.4(b). In reaching this conclusion, the Court employed a two prong test. The first inquiry was whether Ms. Plank engaged

- 15 -

in criminal conduct. Clearly, she did. Ms. Plank was found guilty of Driving Under the Influence of Controlled Substances (DUI) and Possession of Controlled Dangerous Substance—Marijuana. Certified copies of the Morgan County, West Virginia Magistrate Court charging documents and Criminal Judgment Orders for both offenses were admitted into evidence as Petitioner's Exhibit 3. The second inquiry was whether that conduct adversely reflected on Ms. Plank's honesty, trustworthiness or fitness in other respects.[] The Court of Appeals has held that "possession of . . . any controlled substance, undermines the administration of justice, is extremely serious and cannot be condoned." *Attorney Grievance Comm'n v. Gilbert*, 356 Md. 249, 255, 739 A.2d 1, 4 (1999). Respondent was driving under the influence of a controlled substance and was in possession of marijuana. Ms. Plank's crimes negatively reflect on her honesty, trustworthiness and fitness as an attorney.

A lawyer violates MLRPC 8.4(c) when he or she engages in conduct involving dishonesty, fraud, deceit and/or misrepresentation. Respondent engaged in the unauthorized practice of law in Texas. Engaging in the unauthorized practice of law and falsely holding oneself out as a lawyer is criminal conduct in Texas. The factual findings related to Respondent's conduct in Texas are sufficient to find a violation of MLRPC 8.4 (c).

In addition, Respondent falsely represented that Ms. Porter's bank had refused Ms. Porter's first check in the amount of $1,500 and induced Ms. Porter to pay another $1,500. Respondent also used deceptive means to convince Ms. Porter to pay Respondent legal fees for services that Respondent could not lawfully provide. This conduct involved dishonesty, fraud, deceit and/or, misrepresentation, and is a violation MLRPC 8.4(c). The factual findings that supported the violation of MLRPC 3.3(a) also provide the basis for a finding that Respondent engaged in conduct involving dishonesty and misrepresentation with regard to the Motion for Withdrawal that was filed in Ms. Porter's case, a violation of MLRPC 8.4(c).

With respect to Mr. Jones, Respondent told Investigator Ramsey that she did not have the necessary software to prepare his court filings. Respondent indicated that she was forced to engage the assistance of another attorney and paralegal to do so and that she paid the paralegal $894. It was confirmed that an attorney and his paralegal assisted Respondent in preparing the necessary documents, but neither received any payment. Respondent also represented falsely that it was necessary for her to engage the paralegal at personal expense because the attorneys who referred Mr. Jones to Respondent refused to return her calls or supply any support in the representation.

Moreover, Respondent engaged in conduct involving dishonesty, deceit and misrepresentation when she provided false information to Mr. Lal regarding his financial and legal liability to her and the Court. The same misrepresentations that supported the violation of MLRPC 8.1(a) provide clear and convincing evidence that 8.4(c) was violated.

A lawyer engages in conduct prejudicial to the administration of justice, in violation of MLRPC 8.4(d), when he or she engages in conduct that "tends to bring the legal profession into disrepute." *See, e.g. Attorney Grievance Comm'n v. Basinger*, 441 Md. 703, 712, 109 A.3d 1165, 1170 (2015) (citing *Attorney Grievance Comm'n v. Reno*, 436 Md. 504, 511, 83 A.3d 781, 785 (2014)). Respondent was driving under the influence of a controlled substance and was in possession of marijuana. Such criminal conduct, when engaged in by a member of the Maryland Bar, is likely to impact negatively the public's perception of the legal profession. The factual findings related to Respondent's criminal conduct in West Virginia are sufficient to confirm, by clear and convincing evidence, that Respondent violated MLRPC 8.4(d).

In addition, Respondent filed untimely discovery requests and opposing counsel refused to provide the requested discovery. Instead of seeking a resolution through the Court, Respondent threatened to bring an unfounded disciplinary complaint against Mr. Wheat. These findings provide clear and convincing evidence that Respondent engaged in conduct prejudicial to the administration of justice in violation of MLRPC 8.4(d).

Respondent failed to provide Mr. Jones with competent and diligent representation, failed to keep him reasonably informed concerning the representation and, as a result, charged an unreasonable fee. Respondent also failed to respond timely to Petitioner's requests for information and made false representations during the investigation. These actions constitute the type of conduct likely to bring the profession into disrepute and were prejudicial to the administration of justice, in violation of MLRPC 8.4(d).

Respondent's threatening and dishonest conduct towards Mr. Lal provides clear and convincing evidence that she engaged in conduct of the type likely to bring the legal profession into disrepute, in violation of MLRPC 8.4(d). Respondent's breach of attorney client privilege/confidentiality, with respect to Mr. Lal, was also the type of conduct likely to bring the legal profession into disrepute.

- 17 -

The manner in which this Court reviews attorney discipline proceedings is well established:

> This Court has original and complete jurisdiction over attorney discipline proceedings in Maryland.  We conduct an independent review of the record and we accept the hearing judge's findings of fact unless shown to be clearly erroneous.  Under our independent review of the record, we must determine whether the findings of the hearing judge are based on clear and convincing evidence.  With respect to exceptions, upon our review of the record, the hearing judge's findings of fact generally will be accepted unless they are clearly erroneous.  A hearing judge's factual finding is not clearly erroneous if there is any competent material evidence to support it.

*Attorney Grievance v. Hodes*, 441 Md. 136, 168–69, 105 A.3d 533, 552–53 (2014) (citations, footnote, and quotations omitted).  If no exceptions are filed, this Court may treat the hearing judge's findings of fact as established.  Md. Rule 16-759(b)(2)(A) (now Md. Rule 19-729(b)(2)); *see also  Attorney Grievance Comm'n v. Lara,* 418 Md. 355, 364, 14 A.3d 650, 656 (2011).  We review *de novo* the hearing judge's conclusions of law.  Md. Rule 16-759(b)(1) (now Md. Rule 19-729(b)(1)); *see also Page,* 430 Md. 602, 626, 62 A.3d 163, 177 (2013).  "This is true even where default orders have been entered by the hearing judge." *Attorney Grievance Comm'n of Maryland v. Gerace*, 433 Md. 632, 648, 72 A.3d 567, 576 (2013) (citing *Attorney Grievance Comm'n v. Tinsky,* 377 Md. 646, 653, 835 A.2d 542 (2003).

## III.  Discussion

Neither Respondent nor Petitioner filed exceptions to the hearing judge's findings of fact or conclusions of law.  Upon our *de novo* review of the record before us, we agree, for the reasons stated in the hearing judge's conclusions of law, that Respondent violated

MLRPC 1.1; 1.3; 1.4; 1.5(a); 1.6; 1.15(a) and (c); 1.16(d); 3.3(a); 5.5(a); 7.1(a); 8.1(b); and 8.4(b), (c), and (d).

Here, Petitioner recommends disbarment.  Specifically, Petitioner states that "Respondent's misconduct constituted a disturbing pattern of intentional dishonesty, criminal conduct and conduct prejudicial to the administration of justice.  Respondent has deceived her clients, lied to the courts, threatened opposing counsel and her client and obstructed Bar Counsel's investigation."

The appropriate sanction for violations of the Rules of Professional Conduct generally "depends on the facts and circumstances of each case, including consideration of any mitigating factors." *Attorney Grievance Comm'n v. Zuckerman,* 386 Md. 341, 375, 872 A.2d 693, 713 (2005) (citations omitted).  The purposes of attorney discipline are "'to protect the public, to deter other lawyers from engaging in violations of the Maryland Rules of Professional Conduct, and to maintain the integrity of the legal profession.'" *Id.* (quoting *Attorney Grievance Comm'n v. Awuah,* 374 Md. 505, 526, 823 A.2d 651, 663 (2003)).  In *Attorney Grievance Comm'n v. Sheridan,* 357 Md. 1, 741 A.2d 1143 (1999), we said:

> Because 'an attorney's character *must remain beyond reproach*' this Court has the duty, since attorneys are its officers, to insist upon the *maintenance* of the integrity of the bar and to prevent the transgressions of an individual lawyer from bringing its image into disrepute.  Disciplinary proceedings have been established for this purpose, not for punishment, but rather as a catharsis for the profession and a prophylactic for the public.

*Id.* at 27, 741 A.2d. at 1157 (quoting *Attorney Grievance Comm'n v. Deutsch,* 294 Md. 353, 368–69, 450 A.2d 1265, 1273 (1982)).

The hearing judge found that Respondent engaged in criminal conduct which adversely reflects on her honesty, trustworthiness, or fitness in other respects in violation of MLRPC 8.4(b). Specifically, Respondent engaged in the unauthorized practice of law in Texas. Respondent threatened to bring an unfounded disciplinary complaint against opposing counsel. Further, Respondent misrepresented to a client that a bank had refused the client's first check of $1,500 in order to induce that same client to pay an additional $1,500 to Respondent. Respondent's misrepresentations—to Bar Counsel's investigator, clients, and the courts—violated MLRPC 8.4(c). Furthermore, Respondent engaged in conduct prejudicial to the administration of justice, in violation of MLRPC Rule 8.4(d) based on the conduct described above.

Respondent engaged in a pattern of misconduct and multiple offenses. This Court has held that "when an attorney's misconduct is characterized by 'repeated material misrepresentations that constitute a pattern of deceitful conduct as opposed to an isolated instance,' disbarment follows as a matter of course." *Attorney Grievance Comm'n v. Framm*, 449 Md. 620, 667, 144 A.3d 827, 855 (2016) (quoting *Attorney Grievance Comm'n Lane*, 367 Md. 633, 647, 790 A.2d 621, 629 (2002). Respondent engaged in wide-ranging misconduct involving deceit and criminal convictions. Respondent obstructed Bar Counsel's investigation and failed to participate in these proceedings. Disbarment is the appropriate sanction to protect the public.

For these reasons, we issued the April 4, 2017 per curiam order disbarring Respondent and assessing costs against her.